[No. 20448.   In Bank. — January 28, 1889.]

# THE PEOPLE, RESPONDENT, v. FONG CHING, ALIAS PETE, APPELLANT.

CRIMINAL LAW — BRIBERY OF WITNESS — INSTRUCTIONS — PROVINCE OF JURY. — Upon the trial of a defendant accused of bribing a witness to swear falsely, the defense being that the money was paid at the solicitation of the witness to secure his friendship and to dissuade him from swearing falsely, an instruction that it is not among the recognized customs of this country to subsidize the personal integrity of our citizens in order to prevent them from lapsing into falsehood and perjury is erroneous, as invading the exclusive province of the jury to weigh the evidence and find the facts.

ID. — ACTION IN WHICH WITNESS WAS BRIBED — EVIDENCE. — To show the materiality of proposed false testimony which the defendant is accused of having attempted to secure by bribery to aid a criminal to escape, it is competent to show the general nature of the crime in respect to which the testimony was to be given; but it is error to allow evidence of full details of self-criminating conduct on the part of the person accused of such crime, so as to prejudice the jury against the defendant by inflaming their minds against a third person.

ID. — CORROBORATION OF DETECTIVE. — The rule that a detective officer who pretends to be an accomplice in order to ferret crime may prove that in fact he was not an accomplice by showing that he disclosed what he was doing to his superior officer, is an exception to the general rule that a witness is not allowed to corroborate his evidence by proof of similar statements to third parties, but the rule applicable to a detective should not be allowed to be carried beyond its true limits so as to let in irrelevant statements to third persons not contemplated by the rule.

ID. — EVIDENCE OF CHARACTER. — It is error to admit evidence of a witness that he had learned since the arrest of the defendant that his reputation before the arrest was bad.

ID. — CROSS-EXAMINATION OF DEFENDANT. — When the defendant testifies in chief about his birth, parentage, education, and business, he may be asked, on cross-examination, whether he had ever been arrested before.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

Upon the cross-examination of the defendant, he was asked if he had ever been arrested before, to which he gave a negative answer. Further facts are stated in the opinion of the court.

*H. H. Lowenthal*, for Appellant.

Evidence is not admissible to show that a witness had made similar statements on other occasions. (1 Greenl. Ev., sec. 469; Roscoe's Ev. 96; *Munson* v. *Hastings*, 12 Vt. 346; 36 Am. Dec. 345; *Ware* v. *Ware*, 8 Greenl. 42; *Craig* v. *Craig*, 5 Rawle, 91; *Deshon* v. *Merchants' Ins. Co.*, 11 Met. 209; *Robb* v. *Hackley*, 23 Wend. 50; *People* v. *Doyell*, 48 Cal. 91; *People* v. *Jacobs*, 49 Cal. 386; *Barkly* v. *Copeland*, 74 Cal. 1.) Evidence of knowledge of reputation acquired subsequent to the commission of the alleged crime is incompetent. (*White* v. *State*, 8 Ky. 487; *Brown* v. *State*, 46 Ala. 184; *Wroe* v. *State*, 20 Ohio St. 460; *State* v. *Johnson*, Winst. 152; *Carter* v. *Commonwealth*, 2 Va. Cas. 169; *Douglass* v. *Tousey*, 2 Wend. 365; 20 Am. Dec. 616; 1 Greenl. Ev., sec. 46.) It was error to attempt to make the defendant a witness against himself by the cross-examination as to matters not testified to in chief. (Const., art. 1, sec. 13; Pen. Code, sec. 1323; *People* v. *O'Brien*, 66 Cal. 602; *People* v. *Hamblin*, 68 Cal. 101.) The charge usurped the province of the jury. (Const., art. 6, sec. 19; *People* v. *Williams*, 17 Cal. 142.)

*Attorney-General Johnson*, for Respondent.

The officer's reports of his interviews with the defendant were admissible. (1 Greenl. Ev., sec. 382; *Rex* v. *Despard*, 12 Howell's State Trials, 489; *State* v. *McKean*, 36 Iowa, 343; 14 Am. Rep. 530.) Defendant was not prejudiced by the evidence as to his reputation. (*People* v. *Collins*, 75 Cal. 411.) The cross-examination of defendant was legitimate. (Roscoe's Ev., 133; 1 Greenl. Ev., sec. 449; *People* v. *Ah Woo*, 49 Cal. 33; *People* v. *Chin Mook Sow*, 51 Cal. 600; *People* v. *Johnson*, 57 Cal. 571; *People* v. *Meyer*, 75 Cal. 383.)

McFARLAND, J. — The defendant was convicted of the crime of offering to give a bribe to a witness, under section 137 of the Penal Code. He appeals from the judgment, and from an order denying a new trial.

There are thirty-nine assignments of error; and as many of them are about rulings concerning the admissibility of evidence, we have been compelled to examine carefully the whole transcript, which consists of four large books of manuscript. And, when read, it is found to consist, to a great extent, of lengthy, wearisome, and apparently pointless examinations and cross-examinations of witnesses and other immaterial and worthless matter, utterly useless in pointing the exceptions taken. Under our view of the case, however, there is no need to notice much of this unnecessary matter.

It appears that, on July 28, 1886, J. B. Martin, who was a policeman of the city of San Francisco, arrested one Lee Chuck for the alleged murder of one Yen Yuen, who was on that day shot and killed on a public street of that city. And the charge against the defendant herein, Fong Ching (or Pete), upon which he was convicted, is, that he offered said policeman, Martin, a bribe of four hundred dollars to testify falsely upon the examination of said Lee Chuck for said alleged murder; "that he [Martin] had seen some persons attack said Lee Chuck with pistols, and that he [Lee Chuck] had shot in amongst them." On the trial of the case at bar, Martin testified, in substance, that soon after the arrest of Lee Chuck, the defendant herein (Pete) met him (Martin), and asked him "to be light" on Lee Chuck, and that he (Martin) gave some evasive answer, saying, "I will see," or something like that; that during the next day or two he had several private interviews with the defendant (another policeman, named Love, being present part of the time), at which defendant offered to give various sums of money to Martin if the latter would agree to swear falsely, as above stated; that he (Martin) pretended to listen favorably to defendant's proposals, for the purpose of leading him on, so that he might have sufficient evidence of the crime; that he demanded higher sums of money than defendant would offer;

that he never received or took any money at all from
defendant; and that finally defendant offered him four
hundred dollars for the proposed false testimony.  On
the other hand, defendant testified that Martin made
the first proposal about money; that defendant never
gave or offered to give any money to Martin to induce
the latter to swear falsely; that Martin represented that
he could be of great service to Lee Chuck; that defend-
ant was a warm friend of Lee Chuck, and feared that a
certain strong Chinese society, which was very hostile to
Lee Chuck, would use money to induce Martin to testify
falsely against him, and that at the solicitation of Mar-
tin he (defendant) gave Martin various sums of money,
amounting in all to four hundred dollars, for his friend-
ship, and to induce him to testify merely to the truth,
and not to testify falsely against Lee Chuck.  It is evi-
dent that the decision of the case turned mainly upon
the amount of credence which the jury should give to
either one of these conflicting stories.  (It appears inci-
dentally in the transcript that two former juries failed to
agree.)  Bearing upon this state of the testimony, the
court below, of its own motion, gave a certain charge to
the jury; and it is contended that the latter part of said
charge (given below in Italics) was an unauthorized in-
trusion into the province of the jury.  The charge is as
follows: —

"The defendant has testified as a witness in his own
behalf.  On the witness-stand he told you that at certain
times between the 28th of July and the 1st of August,
1886, he gave and delivered four hundred dollars to
Mr. Martin, and that the object of giving it was to en-
list and secure the friendship of Martin and to dissuade
him from giving false testimony on the prosecution of
Lee Chuck, then about to be tried for murder.  If you
believe the defendant's version, your verdict should be
not guilty.  It is not a crime in this state to encourage a
witness with pecuniary gifts to be truthful, but neither *is*

*it among the recognized customs of this country to subsi-
dize the personal integrity of our citizens in order to pre-
vent them from lapsing into falsehood and perjury."*

This language could have but one meaning and pur-
pose.    In addition to incorporating an unproved fact
into the case, it was an argument against the truthful-
ness of defendant's testimony, and its direct tendency
was to influence the jury not to believe it.    It might
have been a legitimate argument in the mouth of the
attorney for the prosecution; and, in such event, the
attorney for defendant could have answered it as best he
knew how, upon, at least, equal terms, — counsel against
counsel.    But the weight of the opinion of the court
had no place in either scale.    The prosecuting officer in
criminal cases is the district attorney, not the presiding
judge of the court.    The main duty of the latter is to
see that the trial is orderly and legally conducted; to
rule upon such questions of law as are presented to him,
or to declare such law as is applicable to the case; and to
sit impartially between the people and the defendant.
But the moment he attempts to comment upon or argue
about the weight of evidence, the credibility of witnesses,
or the probability of their sworn statements, he usurps
power and violates section 19 of article 6 of the state
constitution, which provides that "judges shall not
charge juries with respect to matters of fact."    "To
*weigh the evidence* and find the facts is, in this state, the
exclusive province of the jury; and with the performance
of that duty the judge cannot interfere without a pal-
pable violation of the organic law."    (*People* v. *Dick*, 34
Cal. 666.)    The same principle is declared in numerous
other decisions of this court.    (See cases cited in Desty's
Constitution of California, under section 19 of article 6.)
The language objected to in the above charge is, there-
fore, clearly erroneous; and that it was material and
prejudicial to appellant is apparent to lawyer or lay-
man.    It threw the weight of the court against the

defendant at the very pivotal point of the contest. For this reason the judgment must be reversed.

We shall not examine at length the many other assignments of error. It is proper, however, to notice two or three of them.

1. In order to show the materiality of the proposed false testimony, which, as is alleged, defendant sought to have Martin give, it was allowable, no doubt, to put in evidence the general nature of the crime with which Lee Chuck was charged; but we think that the court allowed the prosecution to go too far in that direction. The accusation against the defendant in the case at bar is that he sought corruptly to induce Martin to swear falsely that on the day Yen Yuen was killed he (Martin) " had seen some persons attack the said Lee Chuck with pistols, and that said Lee Chuck shot in amongst them." Surely but little was necessary to point the materiality of such testimony. And yet the prosecution was allowed, against defendant's objections, to introduce in evidence all the details of the arrest of Lee Chuck, and his conduct at the time, for instance, that he tried to shoot the arresting officer, that he had several pistols in his possession, that he had on his person a coat-of-mail, etc. How was all this relevant to a charge against the defendant, Pete, of an attempt to bribe Martin? Clearly it was an attempt, under the guise of another purpose, to wrongfully prejudice the jury against the defendant by inflaming their minds against a third person.

2. And in the same way the court went too far in allowing the testimony of the witness Martin to be corroborated or bolstered, by showing that he had made statements similar to those of his testimony to third parties, a thing which, as a general rule, is not allowable. This evidence was admitted under the rule that a detective officer who pretends to be an accomplice in order to ferret crime may prove that, in fact, he was not an accomplice, by showing that he disclosed what he was

doing to his superior officer.   The rule, within its legitimate bounds, is no doubt well established; but in the case at bar it was allowed to be carried beyond its true limits.   Courts should be careful not to permit a rule of evidence, proper under certain circumstances and for certain limited purposes, to be used as a means of opening the door to a mass of irrelevant matter never contemplated by the rule itself.

3. We think also that the court erred in allowing the witness Glennon to testify that he had learned *since* the arrest of defendant that his reputation *before* his arrest was bad.

4. The cross-examination of the defendant was certainly very broad; but as he testified in chief about his birth, parentage, education, and business, we cannot say that he did not open the door wide enough to justify what followed in the cross-examination.

There are many other points made which we do not deem it necessary to notice.

Judgment and order reversed, and cause remanded for a new trial.

WORKS, J., SHARPSTEIN, J., THORNTON, J., and PATERSON, J., concurred.