## PEOPLE v. GALLAGHER.*

### No. 20,972; August 16, 1893.

#### 33 Pac. 890.

**Embezzlement—Drawing Funds from Bank.**—The President of a Corporation, to pay an indebtedness of the corporation, the exact amount of which he did not know, signed, as president, a blank check, payable to the secretary, which was given to him, with directions to fill in the amount, and pay the debt. He filled it in for a larger amount, and on having it paid to him appropriated the entire sum. Held, that the money paid him was the money of the corporation, and not that of the bank.

**Embezzlement—Drawing Funds from Bank.**—It Being Within the Course of the secretary's employment to draw, on like checks, the money of the corporation from the bank, and to pay its debts, he is estopped to claim that the money did not come into his control by virtue of his employment, because he filled in the check for a larger amount than he was authorized.

**Embezzlement — Aiding and Abetting.**—By Previous Appointment defendant went to a saloon near a bank, while the secretary drew the funds. They immediately went to another city, where defendant registered under a fictitious name, procured currency for part of the coin, took most of the funds, in a valise, to a railroad station, where he obtained two tickets, paying therefor from the appropriated funds. Defendant carried the funds part of the way, and when arrested had some of them on his person. Held, that the evidence warranted a conviction of defendant for aiding and abetting in the embezzlement.

**Criminal Trial—Cross-examination of Defendant.**—Penal Code, section 688, provides that in a criminal action one cannot be compelled to testify against himself, and section 1323 provides that, if a defendant in a criminal action offer himself as a witness, he may be cross-examined as to matters about which he was examined in chief. Held that, where defendant had merely denied that he had advised another to draw money from a bank for the purpose of embezzling it, and had denied all knowledge of intention of the other so to do, it was error on cross-examination to allow him to be asked questions relating to facts transpiring after the money was drawn.

APPEAL from Superior Court, Alameda County; W. E. Greene, Judge.

*For subsequent opinion in bank, see 100 Cal. 466, 35 Pac. 80.

B. F. Gallagher was convicted of embezzlement, and appeals.
Reversed.

W. F. Aram for appellant; Attorney General Hart and Geo.
W. Reed, district attorney, for the people.

SEARLS, C.—Defendant was convicted of the crime of
embezzlement, and appeals from the judgment and from an
order denying a motion for a new trial.

The indictment charges that at the county of Alameda one
Richard C. Beggs, a clerk, agent and servant of the "Oakland
Consolidated Street Railway Company" (a corporation), em-
bezzled $8,500, the personal property of said company, and
that the defendant, B. F. Gallagher, did aid and abet said
Beggs in such embezzlement.

The first point made by appellant is that Beggs did not
commit the crime of embezzlement, as charged in the informa-
tion. "Embezzlement is the fraudulent appropriation of
property by a person to whom it has been intrusted": Pen.
Code, sec. 503. Section 508 of the Penal Code is in the fol-
lowing language: "Every clerk, agent, or servant of any per-
son who fraudulently appropriates to his own use, or secretes
with a fraudulent intent to appropriate to his own use, any
property of another which has come into his control or care
by virtue of his employment as such clerk, agent, or servant,
is guilty of embezzlement." The crime of embezzlement is
a statutory offense, and was unknown to the common law. It
is said that in the common-law definition of larceny there were
two gaps through which, in the expansion of business, many
criminals escaped. The first of these gaps was caused by the
rule that to sustain a charge of larceny it was necessary that
the stolen goods should have been at some time in the prose-
cutor's possession. The second was in the assumption that
when possession of goods was acquired by a bailee no subse-
quent fraudulent conversion constituted larceny while the
bailment lasted, save in a few excepted cases. It was to meet
these defects in the common law that statutes have been passed
in most, if not all, of the states of our Union, in some of which
an offense is created known as embezzlement larceny, and in
others, as in our own statute, designating the offense as em-
bezzlement. The case at bar relates to the remedy for the

first defect mentioned in the common law, viz., a case in which the personal property alleged to have been fraudulently converted had not been in the prosecutor's possession.

These preliminary remarks with a view to the better understanding of the initial points in the case, and we proceed to a review of the contention of appellant, the underlying theory of which is that the money alleged to have been embezzled did not come into the control or care of Beggs by virtue of his employment as a clerk, agent, or servant. The uncontradicted evidence was to the effect that the Oakland Consolidated Street Railway Company (a corporation) was doing business at Oakland, in the county of Alameda, was indebted to two companies in several sums of money aggregating say $2,500; that Richard C. Beggs was secretary of the corporation, and as such secretary his duties were, among other things, to keep the books of the company, to receive all the coin due the company, and deposit it (except small sums, kept to pay off discharged workmen) in the First National Bank of the city of Oakland; to draw and sign checks as secretary, which checks were also to be signed by the president or vice-president; that the corporation had in the bank aforesaid some $8,000 to $10,000 and credit for an overdraft of $10,000; that on or about June 3, 1892, J. E. McElrath, vice-president of the corporation, for the purpose of paying off the indebtedness of the corporation to the two companies aforesaid, and not knowing the precise amount thereof, signed and delivered to Beggs two checks, payable to his (Beggs') order, on said bank, leaving the amount to be paid thereon and on each of them in blank. The evidence is contradictory as to whether Beggs was to indorse the checks and deliver them to the creditors or to draw the money thereon from the bank and pay them. As there was evidence to that effect, we must, in favor of the verdict, assume the latter theory to have met the approbation of the jury. On the sixth day of July, 1892, Beggs filled up the checks, one for $4,000 and the other for $4,519.20, signed them as secretary, drew the full amount thereof, aggregating $8,519.20, from the First National Bank, converted $1,300 thereof into currency, left $2,500 with his wife, and fled with the residue to the northern part of the state, where he was arrested two or three days later, and thereupon confessed his guilt. The connection of defendant with the transaction is

not here mentioned for the reason that the contention under this head relates only to the receipt of the money by Beggs in the course of his employment. The argument that the money received by Beggs was that of the bank, and not that of his corporate employers, cannot be maintained. The corporation had funds in the bank. The checks were duly signed by the authorized officer of the corporation, and countersigned by Beggs, its secretary. Under such circumstances, it was not only the privilege, but the duty, of the bank to pay the checks to Beggs, who was the payee and holder thereof, upon presentation; and when paid the amount of payment was a proper charge against the corporation. This being so, the money, when received by Beggs, was as much the property of the corporation as though collected by the former for it upon a lawful account against any other debtor of the corporation.

It is further urged that Beggs had no authority to draw the money from the bank, and hence it did not "come into his control or care by virtue of his employment," within the purview of the statute. The earlier English authorities are not uniform on this proposition. In Rex v. Snowley, 4 Car. & P. 390, the prisoner was hired to perform certain services, and was authorized to receive not less than twenty shillings in each case. In a single instance he charged only six shillings, which he received, and did not account for. Held, that there was no embezzlement of the six shillings, inasmuch as it was his duty to take no sum less than twenty shillings, and therefore the six shillings were not received by the prisoner in the course of his employment. There are other English cases of like import, while perhaps an equal number of cases in the same courts hold a contrary doctrine. Bishop, in his work on Criminal Law, in commenting upon Rex v. Snowley, uses the following language: "That in reason, whenever a man claims to be a servant while getting into his possession by force of this claim the property to be embezzled he should be held to be such on his trial for the embezzlement. Why should not the rule of estoppel, known throughout the entire civil department of our jurisdiction, apply in the criminal? If it is applied here, then it settles the question; for by it, when a man has received a thing from another under a claim of agency, he cannot turn round and tell the principal asking for the thing, 'Sir, I was not your agent in taking it, but a deceiver

and a scoundrel'": Bish. Crim. Law., 3d ed., sec. 367. In
the seventh edition of the same work, like language, with some
additions, is used at section 364 of volume 2. In Ex parte
Hedley, 31 Cal. 109—a case involving the same question, and
in many respects similar to the one at bar—this court quoted
with marked approval the foregoing extract from Bishop, and
in an opinion regarded as conclusive of the question here held
that, if an agent obtains the money of his principal in the
capacity of agent, but in a manner not authorized, and con-
verts the same to his own use, with intent, etc., it is money
received "in the course of his employment" as agent. The
evidence shows that it was within the course of the employ-
ment of Beggs to draw, upon like checks with those in ques-
tion, the money of the corporation from the bank, and to pay
its debts. In the present instance he held the two checks with
authority to fill them up in amounts aggregating about $2,500,
and, according to his evidence, to draw the money, and pay
the creditors of the corporation, or, according to the evidence
of the vice-president, to indorse and deliver them to the cred-
itors. It was as the secretary, and in the course of his em-
ployment as such, that he received the checks and filled them
up, but in a manner different from his instructions, in that
he filled them for larger amounts than he was authorized.
Under such circumstances, he comes within the rule laid down
by Bishop, supra, as interpreted in Ex parte Hedley, supra.

Appellant further insists that there is no evidence whatever
that defendant aided and abetted in the appropriation and
conversion of the money. In the light of the testimony this
claim seems somewhat extraordinary. There was testimony
tending to show that by previous appointment defendant re-
paired to a saloon in the vicinity of the bank while Beggs
procured the money; that they immediately met, and came to
San Francisco with the funds, procured a private room at the
Lick House, where defendant registered under a fictitious
name; that he procured currency for $1,300 of the coin, took
all of the funds except $2,500, in a valise, to the Oakland sta-
tion, procured tickets for himself and Beggs to Sacramento,
paying therefor from the appropriated funds, had access to
and carried the money at least a portion of the time, and when
arrested had $50 or $60 of the money on his person, coupled
with the fact that they did not pursue the usual course of

travelers in procuring through tickets to their destination, but only for short distances, and in various ways acted unlike men with money in hand, honestly acquired, intent upon a journey, taken in connection with the statements of defendant when arrested and subsequently, lead irresistibly to the conclusion that the two men were particeps criminis. Waiving, therefore, the evidence that it was the defendant who, previous to the commission of the crime, had "advised and encouraged" it, and we think the evidence against defendant was ample to warrant a conviction. The very fact that the embezzlement was determined upon before the money was drawn from the bank detracts nothing from the guilt of defendant as an aider and abetter under such circumstances. Mere intention to commit a crime does not constitute an offense. Had Beggs, after procuring the money from the bank, honestly appropriated it to the legitimate uses of his employer, then, although the amount was in excess of the sum he was authorized to draw, his offense would have been incomplete. It was the subsequent wrongful appropriation of the funds that constituted the crime, and in this the defendant participated under circumstances clearly indicating guilty knowledge and criminal intent. He was not simply an accessory after the fact, but a coworker in the performance of the acts constituting the corpus delicti.

Defendant, Gallagher, was a witness in his own behalf at the trial, and upon cross-examination certain questions were propounded by the court, against the objection of defendant's counsel, and this action is assigned as error. Beggs was a witness for the prosecution, and had testified at length in the case, and as to all, or nearly all, of the facts therein. Among other things, he related that after he received the two checks defendant saw them, and advised filling them up, drawing the money, and fleeing to Seattle, or some foreign port; that they met on Saturday, June 4th, again on Sunday, and talked the matter over, and finally agreed that on Monday, June 6th, at 12 o'clock, the witness was to draw the money, and defendant to wait outside until Beggs came out, and, if detained long, defendant was to go to a certain saloon across the street, and wait for him; that he drew the money, and met the defendant at the saloon. Beggs further detailed their acts from thence until arrested. As a witness in his own behalf, defendant

denied that on Saturday next before June 6th he saw the
checks, or that he ever saw them prior to the trial; denied that
he ever advised Beggs to take the funds of the bank or of
the corporation, or to draw the funds, or that he suggested
that they would or could go to Canada or elsewhere and
divide the money. He admitted they met on Sunday (June
5th), and that Beggs made an appointment to meet him at the
saloon the next day, but declared there was no particular pur-
pose for which they were to meet, and averred that nothing
was said about drawing money from the bank. Defendant
was then asked if he and Beggs did go to San Francisco and
take the $8,500, etc.? (2) If he, in San Francisco, assisted
Beggs in changing the money to the extent of $1,300 into cur-
rency? (3) If he took $6,000 of the money back to Sixteenth
street, Oakland? These questions were each of them objected
to upon the ground of not being proper cross-examination,
not having reference to any matter testified to by the witness
in his examination in chief, etc. Upon the objections being
overruled, and exceptions duly taken, the witness declined to
answer, upon the ground that such answer would tend to crim-
inate him, whereupon the court compelled the witness to an-
swer. He answered that he did go with Beggs and take the
money to San Francisco; that he did exchange $1,300 of the
coin into currency; and did take $6,000 of the money to Oak-
land, etc. "A defendant in a criminal action or proceeding
cannot be compelled to be a witness against himself; but if
he offer himself as a witness he may be cross-examined by the
counsel for the people as to all matters about which he was
examined in chief": Pen. Code, sec. 1323. "No person can
be compelled, in a criminal action, to be a witness against
himself": Pen. Code, sec. 688. In People v. O'Brien, 66 Cal.
602, 6 Pac. 695, it was held that where the accused offers
himself as a witness, and testifies to particular facts only, he
cannot be cross-examined generally as a witness in the case.
"He may be cross-examined . . . . as to all matters about
which he was examined in chief." By this expression it
is understood that the cross-examination must be confined
strictly, not to the precise questions put to the witness in chief,
but to the subject matter concerning which he has testified.
In other words, it must be a legitimate cross-examination,
within the rules of evidence, and with no discretion on the

part of the court to enlarge the field of inquiry—an examination the trend of which must be in the direction of disproving, explaining or enlarging the proofs upon the very subject concerning which he has spoken in his direct examination. Within this field he may be tested in like manner with other witnesses. But when, under the guise of discrediting the witness, he is questioned and compelled to testify upon branches of the case to which his direct testimony did not extend, and thus to become a witness against himself, the testimony is without the pale of cross-examination, and his constitutional and statutory rights are as clearly violated as though he had never consented to become a witness. Tested by this rule, it would seem the court below erred in compelling defendant to answer the questions to which objection was made. He had testified to the extent of denying that on or before June 6th he had advised Beggs to draw the money from the bank for the purpose of embezzling it, and denied all knowledge of the latter's intention so to do. The cross-examination extended to facts transpiring after the money was obtained, including its disposition, the flight of the parties, and other damaging facts; all of which was highly injurious to defendant. The following cases bear more or less directly upon the subject in hand: People v. Sutton, 73 Cal. 243, 15 Pac. 86; People v. Fong Ching, 78 Cal. 169, 20 Pac. 396; People v. Rozelle, 78 Cal. 84, 20 Pac. 36; People v. Cline, 83 Cal. 374, 23 Pac. 391. See, also, Rice, Ev., note to page 344, where the whole subject is discussed, and cases cited. I find no other error in the proceedings worthy of note. For the error in admitting the evidence of defendant on cross-examination the judgment and order appealed from should be reversed and a new trial ordered.

We concur: Belcher, C.; Temple, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are reversed, and a new trial ordered.