STATE v. WILLIAM STATON.

*Indictment for Arson—Criminal Law—Evidence—Witness— Refreshing Memory from Memorandum— Evidence of Character.*

1. Where a witness is impeached, either by contradictory testimony, on cross-examination, or by attack upon his character, his declarations to a third person, made soon after the transaction, may be stated by himself and afterwards shown by such third person in way of corroboration.

2. A witness may be compelled, at the instance of a party who is examining him, to inspect a writing which is present in court and in his own handwriting, or if it otherwise appear that by referring to it he can refresh his memory concerning the transaction to which it relates.

3. Where a writing relates to collateral matters and a defendant on trial could derive no benefit from compelling a witness for the prosecution to inspect it, the refusal of the Court to compel witness to refresh his indistinct recollection of the matter is a harmless error and not reversible.

4. Where, in a trial of defendant for arson, the prosecuting witness testified that the defendant told him that he sold the cotton taken from the barn to W., who was neither a party nor witness, it was not error to refuse to allow the defendant to prove that W. was a man of good character.

INDICTMENT for burning a barn, tried at January Term, 1894, of PITT Superior Court, before *Bynum, J.*

There was a judgment against the defendant, imprisoning him in the Penitentiary for five years, from which he appealed.

The facts are sufficiently adverted to in the opinion.

*The Attorney General,* for the State.
No counsel *contra.*

AVERY, J.: It is needless to cite authority to sustain the familiar rule of evidence, that where a witness is impeached either by contradictory testimony, cross-examination or an attack upon his character, his declarations made soon after the transactions to a third person may be stated by himself and afterwards shown by such third person in order to corroborate him. *State* v. *Whitfield,* 92 N. C., 831; *State* v. *Rowe,* 98 N. C., 629.

A witness may be compelled, at the instance of a party who is examining him or cross-examining him, to inspect a writing, which is present in the court, if the writing is in his handwriting, or it appear otherwise that there is reason to believe that by reading it his memory may be refreshed so as to enable him to recollect clearly the transaction as to which he is testifying. 1 Greenleaf on Ev., section 436. If he recollects, after such inspection, to have seen the writing before, he may even be allowed to testify that at the time he last saw it or when he wrote it himself, he knew the contents to be correct, though he now has no independent recollection of the facts. 1 Greenleaf, section 437. It was therefore error to refuse to allow the memory of the witness Thigpen to be tested by causing him to look at his own memorandum of the testimony heard on the preliminary trial, in order that after such examination it might appear whether he would either have an independent recollection of the facts or would be able to state that

the memorandum was made correctly. If the paper had been offered as testimony to contradict the witness for the prosecution we would have been confronted with the grave question whether a deposition, or memorandum of evidence, offered either for the State or the defendant, is admissible unless it appear to have been written at the time of the examination and in the presence of the accused and to have been signed by the witness. *State* v. *Valentine*, 7 Ired., 227; *State* v. *Grady*, 83 N. C., 645; *State* v. *Bridgers*, 87 N. C., 562; *State* v. *Thomas*, 64 N. C., 74; *The Code*, §§1144 and 1150. Conceding, however, that it is simply the declaration of the Justice made on the next day, when he was nearer to the transaction and his memory was possibly more distinct, it was the right of the defendant to demand that he inspect it in order to refresh, if possible, his indistinct recollection. 1 Greenleaf, section 437.

But if the witness had read the memorandum and had thereupon stated that he was enabled thereby to recall more distinctly the testimony of the detective, Rowe, and had modified his own evidence, after so refreshing his memory so as to bring it in perfect accord with the memorandum— the Attorney General insists that no material conflict would even then have been shown between the testimony of Rowe on the trial and on the previous hearing—certainly no discrepancy that was not made equally to appear by the evidence of the magistrate as admitted. If the defendant could have derived no benefit from compelling the witness to inspect the paper the error was of course harmless.

The witness Rowe testified on the trial that he did not give the name of the store at Penny Hill which defendant proposed he should break into, but that he thought it was Chase's store. The memorandum of Thigpen represents him as testifying that the defendant said to him: "Now pretty soon everybody will go out of Hicks' store and there

will be nobody there but a little boy about thirteen or
fourteen years old, and there is about $62 in the drawer,
and we can go in and you can take hold of the boy and
put your hand over his mouth and keep him from halloo-
ing. I know where the money drawer is and will go and
break the drawer open," etc. The witness Rowe testified
also that defendant said there was about $70 in the drawer,
whereas both the testimony of Thigpen and the memoran-
dum represent him as testifying at the previous hearing
that the sum was $62 or $63. The exception had its origin
in the failure of Thigpen to recollect whether on the former
trial Rowe said he had a conversation with the defendant
before or after he left his valise at Stancill's store and from
a proposition that upon this point he should refresh his
memory. The testimony of Rowe as to the declarations of
the defendant in reference to breaking into any store was not
necessarily material to the inquiry whether he burned the
house, as charged in the indictment. If objected to the
testimony would only have become material as explanatory
of the ruse used by the witness to win in so short a time
the full confidence of the defendant. Without recurring
to his notes, Thigpen testified that on the examination the
witness Rowe had stated that the defendant told him there
was $62 or $63 in the drawer, thus contradicting Rowe.
It does not appear in any way, however, why it was at all
important to the proper conduct of the defence to inform
the jury at what time the valise was deposited at Stancill's.
If all these facts were collateral—had no bearing upon the
issue of the guilt or innocence of the defendant—it is
familiar learning that no evidence could have been offered
to contradict a witness in relation to collateral matters even
when put upon his guard on his examination in chief
unless where the evidence tended to show temper, dispo-
sition or conduct of the witness toward the cause or the

parties. *State* v. *Patterson*, 2 Ired., 246. If the memorandum shows no conflict in the material portions of the testimony of the prosecuting witness as delivered on the two occasions, it is not competent to contradict him by other testimony at all without putting him on his guard, nor after taking that precaution unless the contradictory testimony tends to show bias. It was incumbent on the defendant, it seems to us, too, to have pointed out the particular fact as to which he proposed to refresh the memory of the magistrate and to have made it appear to the Court how he might have contradicted the witness for the State as to material statements made by him. The memorandum, if it had been admitted as substantive evidence, would not have shown any contradictory statement of the prosecuting witness as to the confession of the defendant that he burned the building, and the declarations of the defendant as to other matters were collateral and immaterial. If it had been material to show that the witness stated on one occasion that he deposited his valise behind Stancill's store, and on another that he placed it, at a certain stage in the consultation with Staton, behind that store, the admission of the memorandum would have failed to accomplish that object since it does not appear from the Justice's notes where he first left his valise, whether in or behind Stancill's store. In fact, the Court was asked to allow the witness to refresh his memory upon this particular portion of the testimony only, and the error in refusing to do so would seem to be harmless if the memorandum would have shown no contradiction as to the place of depositing the valise.

The prosecuting witness having testified that the defendant told him that he sold the property (cotton) taken out of the barn that he had burned to one Warren, the Justice, Thigpen, on his cross-examination was asked if he knew Warren and upon his answering in the affirmative

the defendant proposed to prove by him that Warren was a man of good character. Warren had not been introduced and, so far as the record shows, was not examined as a witness. Unless a defendant in the trial of a criminal prosecution puts his character in issue either by becoming a witness or offering testimony to show that it is good, it is not competent for the State to impeach it, and while the character of a witness may be shown for the purpose of sustaining or impairing the force of his testimony, it does not tend to enlighten the jury upon the question of guilt or innocence to know whether a person, who is neither party nor witness, but is only mentioned in the confession of one accused of crime as the receiver of stolen goods, is of good or bad reputation. *State* v. *Davis*, 92 N. C., 764; *State* v. *Thomas*, 98 N. C., 599; 1 Greenleaf Ev., section 52; 1 Roscoe, star pp. 102 and 103.

We conclude, therefore, that there was no error which entitles the defendant to a new trial.

Judgment Affirmed.