THE STATE OF KANSAS v. E. E. BEATY.

No. 11,788.   ( 62 Pac. 658.)

1. CRIMINAL PRACTICE—*Evidence of Reputation.* A defendant on trial for larceny introduced evidence tending to establish his good character for honesty.   Witnesses on behalf of the state were permitted to testify in rebuttal that the accused, together with three other persons not on trial, sustained bad reputations in that respect. *Held*, error.

The State v. Beaty.

2. ——— *Larceny — Insufficient Information.*  A person having the mere custody or temporary use of personal property in the capacity of servant of the owner, and who could not maintain an action for trespass as bailee for injury to the same, is not properly designated as the owner in an information for larceny.

Appeal from Finney district court; WM. EASTON HUTCHISON, judge.  Opinion filed November 10, 1900. Reversed.

*A. A. Godard*, attorney-general, and *G. L. Miller*, county attorney, for the state.

*Sutton & Scates*, *W. R. Hopkins*, and *T. F. Garver*, for appellant.

The opinion of the court was delivered by

SMITH, J. : The appellant was convicted of grand larceny ; the offense consisting of cattle stealing.  He introduced testimony showing his good reputation for honesty, and the state, in rebuttal, attempted to prove his bad reputation in that respect.  One John Dacy, on behalf of the prosecution, testified, over the objection of the defendant, as follows :

"Ques.  Do you know the reputation of the Dunns and Beatys in that community for honesty and fair dealing, in connection with their cattle business ? Now do you know their reputation, including John Dunn, George Dunn, Will Beaty, and the defendant, E. E. Beaty, for honesty and fair dealing in connection with the cattle business, in the community where they were carrying on their business ?  Do you know what people say about it ?  Ans.  Yes, sir.

"Q.  Judging from what they generally say, is that reputation good or bad ?  A.  It is bad."

Frank Hutchinson testified :

"Ques.  Are you acquainted with the general reputation of the Beatys and Dunns, including the defendant, E. E. Beaty, William Beaty, John Dunn, and

George Dunn, in the community where they carried on their business, as to honesty and fair dealing ; that is, do you know what people 'generally say of them ? Ans. I know what the people say of them in general.

"Q. What is that reputation, good or bad ? A. They are spoken of generally as a pretty tough outfit.

"Q. Was that reputation good or bad ? A. Bad."

Another witness, in response to like questions, testified that the persons named had the reputation in the community where their stock ranged of not doing the right thing in the cattle business.

We think that the admission of this testimony was prejudicial to the rights of the accused, and violative of the rules of evidence applicable to the introduction of impeaching testimony. The defendant had produced witnesses who testified to his own good reputation. He did not attempt to show what reputation was borne by the Dunns or William Beaty. Such evidence would have been inadmissible. They were not on trial, nor were they accused in the information. To permit an inquiry into their reputations was to import into the case a collateral issue. Every man is supposed to be able always to support his own general reputation, but ought not to be expected to be ready to defend the character of those with whom he associates. It can be seen how this trial might have been prolonged by an investigation into the general reputation for honesty of the Dunns and William Beaty. Such inquiry is too remote.

In the case of *State v. Staton*, 114 N. C. 813, 818, 19 S. E. 96, 98, the accused was tried for arson and it was proved that he sold cotton taken out of the barn that was burned to one Warren, and the defendant proposed to prove that Warren was a man of good reputation. The latter was not examined as a witness in the case.

The testimony was rejected. The court said:

"While the character of a witness may be shown for the purpose of sustaining or impairing the force of his testimony, it does not tend to enlighten the jury upon the question of guilt or innocence to know whether a person, who is neither party nor witness, but is only mentioned in the confession of one accused of crime as the receiver of stolen goods, is of good or bad reputation." (See, also, *Redus v. Burnett*, 59 Tex. 576.)

The case of *Walls v. The State*, 125 Ind. 400, 403, 25 N. E. 457, 458, was a prosecution for highway robbery. The defendant offered to prove that one Belcher, his alleged accomplice, was at the time of the robbery a person of good character for honesty, but the court refused to submit such evidence. It was said:

"In this we do not think the court erred. Belcher was not on trial, and the question then under investigation related to the guilt or innocence of the appellant, and did not necessarily involve the guilt or innocence of Belcher. For the purposes of the trial of this cause Belcher was a stranger to the record, and his character for honesty was of no more importance than the character of any other third person."

In the case of *Omer v. Commonwealth*, 95 Ky. 353, 362, 25 S. W. 594, 596, it was said:

"The appellant contends that he should have been permitted not only to establish his own good character among the people of the community—as he did do—but also the good character of each of the parties indicted with him. At first blush it might seem plausible that, as it was sought to make the accused responsible for the acts of these parties, he should be permitted to show their good character, as rebutting the idea of conspiring with such men; but the accused alone was on trial, and his own conduct and character were involved. The rule would have to

work both ways, and a good man caught, ever so innocently, in bad company might be made to suffer from the establishment of such a rule, or if presumption of guilt or innocence might be indulged in according as the party charged was in good or bad company."

In the first count of the information defendant is charged with stealing property belonging to and in the possession of Don Otto; in the second count it is alleged that the property belonged to E. M. Otto, in the possession of Don Otto, holding the same for said E. M. Otto; and in the third count the property is charged to belong to E. M. Otto, held and possessed by Don Otto for E. M. Otto and the Ben. Holmes Commission Co. At the close of the testimony the county attorney elected to rely for conviction upon the first count. We have examined the testimony and do not think it was satisfactorily shown that Don Otto was more than a servant of E. M. Otto, the owner, or had anything beyond a mere temporary custody and use of the property. Under the evidence before us Don Otto could not have maintained an action for trespass as bailee for an injury to the cattle. (12 Encyc. Pl. & Pr. 963.) The testimony as to ownership tended more nearly to sustain the allegations of the third count of the information.

We have considered the other assignments of error. Appellant cannot complain of the amendment of the original information. The claim that the court was without jurisdiction is not well founded. (*The State v. Suppe,* 60 Kan. 566, 57 Pac. 106.)

The judgment of the court below will be reversed and a new trial ordered.