No. 13,996.

SMITH v. THE PEOPLE.
(67 P. [2d] 498)

Decided April 19, 1937.

Mr. H. T. McGarry, Mr. Robert H. LaGrange, for plaintiff in error.

Mr. Paul P. Prosser, Attorney General, Mr. Byron G. Rogers, Attorney General, Mr. Walter F. Scherer, Assistant, for the people.

*In Department.*

Mr. Justice Hilliard delivered the opinion of the court.

A prosecution under '35 C. A. S., vol. 2, page 983, chapter 48, section 81, paragraph 4 (S. L. 1933, c. 60, section 1, par. 4), concerning "Arson—Fourth Degree." To judgment of conviction, error is assigned.

The information charged that Harry M. Hanner, Peter Hanson Smith (plaintiff in error) and Wilson Smith, "On the 28th day of February, A. D. 1936, at the said county of El Paso, did then and there wilfully, maliciously, unlawfully and feloniously place and distribute flammable, explosive and combustible material or substance, to wit: kerosene and gasoline, in the Ruxton Hotel Building, in Manitou Springs, Colorado, in an arrangement and preparation with intent to eventually wilfully and maliciously set fire to and burn the same and to procure setting fire to and the burning of the said Ruxton Hotel Building, contrary," etc.

On oral motion by Hanner in open court, in which

motion plaintiff in error and Wilson Smith joined, severance of trial was ordered. Subsequently, Wilson Smith pleaded guilty and became a witness for plaintiff in error, and Hanner—not yet tried—testified as a witness for the people. Many errors are assigned, but we consider only one, variously set forth, to the effect that in permitting a witness on rebuttal to testify that one Thompson was a "notorious fire bug," and in substantiation thereof to allow the introduction of an exhibit showing what was said to be a picture of Thompson (side and front views), adorned with a number, and bearing legend of Thompson's conviction of arson, the court materially prejudiced plaintiff in error.

Briefly, it appeared that March 28, 1935, plaintiff in error purchased the property involved for $3,000, paid $1,000 cash and secured payment of the balance by a trust deed thereon; that sometime the following month, Thompson, referred to above, bargained to buy one-half interest in the property for $8,000, $500 in cash, then paid, and $7,500 to be paid shortly thereafter; that when contracting to buy an interest in the property Thompson insisted that the insurance thereon, then and when plaintiff in error purchased it, being $3,500, should be raised to $25,000; that on Thompson's demand, as indicated, plaintiff in error did take out $15,000 insurance on the building and $5,000 on the furnishings therein; that preparatory to entering into the enjoyment of his interest in the property, Thompson expended for improvements and furnishings upon and in the property, including the $500 paid on the purchase price, the sum of $2,450; that upon Thompson's return from Kansas City, whence he had gone to get the remainder of the purchase price—$7,500— he reported he had been unable to raise the money; that after some negotiations between them, plaintiff in error and Thompson agreed to rescind their sale agreement, Thompson to have returned to him the sum he had advanced, namely, $2,450, above mentioned, which was evidenced by a second deed of trust or mortgage on the property; that October 5, 1935, subject to the two mort-

gages or trust deeds thereon, plaintiff in error sold and conveyed the property to Hanner, one of his codefendants in the information herein, in consideration whereof Hanner paid plaintiff in error $1,000 cash, gave him his note for $4,000, and deeded him 280 acres of land in Oklahoma; that at the same time plaintiff in error assigned the insurance policies to Hanner. It further appeared that attempt to fire and burn the building occurred at the time and in the manner charged in the information, but that only Wilson Smith had to do with the actualities at the time of the attempt.

Hanner, testifying, admitted his own guilty knowledge of what he says was the purpose of plaintiff in error to cause the property to be burned; but denied that he employed Wilson Smith, as was testified by the latter, to set the fire, while plaintiff in error (and in this he was corroborated by the confessing one) denied knowledge of the plan or purpose to burn the building.

For better understanding of the situation at the time of the introduction of rebuttal testimony, against which plaintiff in error's counsel inveigh, we should recall that plaintiff in error testified that he knew Thompson (deceased before the time of the alleged crime) and related the circumstances which disclosed Thompson's interest in the property, a second deed of trust securing payment of $2,450, as we have seen. The witness who gave the challenged testimony was inspector of detectives Bruce of the police department of Colorado Springs, during whose examination the following occurred:

"Q. At the time this defendant was at the police station in Colorado Springs, at any conversation or at all conversations did he admit any knowledge of his acquaintanceship—long acquaintanceship with this man H. A. Thompson of Kansas City?

"Mr. McGarry: That is objected to as not being proper rebuttal evidence. He has not denied that he knew H. A. Thompson.

"The Court: He said he had only known him a short time, as I remember.

"Mr. Purcell: He testified that he had known him some time before this on account of some transaction.

"The Court: The objection is overruled.

"Mr. McGarry: Exception.

"A. He told me that he hardly knew Thompson; that he knew Thompson held a mortgage on the Ruxton Hotel.

"Mr. McGarry: I move that the answer of the witness be stricken as to the words 'He told me that he hardly knew Thompson,' as not responsive to the question.

"The Court: What was the question?

(Last question read.)

"A. Yes.

"Q. Now state what he said. A. He told me he hardly knew him, that he didn't know where he lived, that we might find him in Kansas City; later he informed me that he was dead; later he gave me the impression—

"Mr. McGarry: Now I move that the answer that he gave him the impression—

"The Court: Yes, state what he said to you.

"Q. Could he give you his full name and initials, or could he pronounce the name of H. A. Thompson, or 'Frock' Thompson?

"Mr. McGarry: That is objected to as leading and suggestive. What difference does it make?

"Mr. Purcell: It will be evident very quickly.

"A. He gave me the name of Hugh A. Thompson.

"Q. Did he give his address? A. He told me he didn't remember his address.

"Q. Did he tell you where you could locate him? A. He said by walking the streets of Kansas City.

"Q. Who is H. A. Thompson?

"Mr. McGarry: That is objected to as wholly immaterial.

"The Court: You put on testimony about it.

"Mr. McGarry: Your Honor, it is wholly immaterial now. What has this got to do with this case?

"The Court: You put it on, Mr. McGarry.

"Mr. McGarry: I offered it to show a transaction.

"The Court: You went into his acquaintance with Thompson, how long he had known him and what transactions he had with him.

"Mr. McGarry: May I be permitted to put on surrebuttal testimony? I don't know what the district attorney is driving at.

"The Court: Go ahead.

"(Last question read as follows): 'Question. Who is H. A. Thompson?'

"A. He is a notorious firebug of Kansas City.

"Mr. McGarry: Now, your Honor, I move that the answer of the witness be stricken as not responsive to the question and is highly prejudicial to this defendant.

"The Court: The motion is denied.

"Mr. McGarry: Then may I be permitted to put on surrebuttal testimony in view of this testimony?

"The Court: We will see when we get to that.

"Q. (Handing photograph to witness.) I hand you People's Exhibit K and ask you to state who that is a picture of? A. Hugh Thompson, alias 'Frock' Thompson.

"Mr. McGarry: I move that the answer be stricken as immaterial, and having nothing to do with the issues in this case.

"The Court: The motion is denied.

"Mr. McGarry: Exception.

"Mr. Purcell: I now offer People's Exhibit K in evidence.

"Mr. McGarry: I object to the offer of People's Exhibit K in evidence for the reason that it is incompetent, irrelevant and immaterial and highly prejudicial, and introduced for one purpose, to prejudice this jury against this defendant.

"The Court: What is the purpose of this, Mr. Purcell?

"Mr. Purcell: With reference to the explanation and reason for the increased insurance that this man Thompson required this defendant to put on this hotel that was burned, as he only had $2450.00 interest which this de-

338

fendant paid for, and to show that he had known him at the time he was arrested and had known him for a long time, and we feel that it is competent in this particular case to go before the jury.

"The Court: For that purpose it will be admitted.

"Mr. McGarry: Now I want to ask permission, in view of this testimony, that the defendant be permitted to put on surrebuttal testimony explaining his acquaintance with this man Thompson and all that he knows about him.

"The Court: When the time comes I will rule on it —when the time comes to offer your surrebuttal.

"Mr. McGarry: I except to the admission of People's Exhibit K in evidence.

"The Court: It seems to me that explains the increased amount of insurance.

"Mr. McGarry: It doesn't explain it unless they can show that this defendant knew of Thompson's business, what his purpose was in increasing the amount of insurance and all that, and without that foundation I think it is absolutely immaterial.

"Mr. Purcell: That is all."

██ ██ When we consider that the case against plaintiff in error was largely made from the testimony of Hanner (charged with the same crime), "it was vitally important * * * that nothing be introduced in evidence, not relevant to the crime charged, which would naturally prejudice the jury." *Tarling v. People,* 69 Colo. 477, 194 Pac. 939. See, also, *Munfrada v. People,* 99 Colo. 80, 60 P. (2d) 223; *People v. Fong Ching,* 78 Cal. 169, 20 Pac. 396. Hanner, we should remember, not plaintiff in error, owned the property involved, held the policies of insurance, and legally was the one in a position to gain from destruction of the property. Considering the showing as of the time the testimony in chief was closed, the jury may well have been in doubt as to where the truth lay, and the casting into the scales of justice at the last moment, the story about Thompson, who, of course, did

not testify, and was neither on trial nor accused in the information, was calculated, we think, to influence the balance adversely to plaintiff in error. We are disposed to the view that the rebuttal testimony in question had no legitimate relevancy, was prejudicial in the extreme and should have been excluded. *State v. Beaty,* 62 Kan. 266, 62 Pac. 658; *Tarling v. People, supra; Elliott v. State,* 34 Neb. 58, 51 N. W. 315; *State v. Staton,* 114 N. C. 813, 818, 19 S. E. 96, 98.

Let the judgment be reversed.

Mr. Chief Justice Burke and Mr. Justice Bakke concur.