[No. 20880. In Bank. — April 1, 1892.]

THE PEOPLE, RESPONDENT, *v.* ELLERY E. DIXON, APPELLANT.

CRIMINAL LAW — GRAND LARCENY — EVIDENCE — DECLARATION OF CO-CONSPIRATOR. — In a prosecution for grand larceny, where a witness had testified to facts sufficient to go to the jury tending to show a conspiracy between the defendant and other parties jointly charged with him in the commission of the same crime, further evidence of such witness as to a statement made by one of the other parties as a co-conspirator in the absence of the defendant, before the commission of the crime was complete, is admissible against the defendant.

ID. — STRIKING OUT HEARSAY EVIDENCE — ANSWER NOT RESPONSIVE. — Upon a prosecution for grand larceny, where a witness who has testified that he saw the horses alleged to have been stolen by the defendant, and upon being asked what he did with them volunteered the statement that he asked a third person whose the horses were, and that he said they belonged to the defendant, such answer should be stricken out on motion, on the ground that it is incompetent and hearsay. The rule that where no objection is made to an interrogatory a motion to strike out the answer will be denied, does not apply where the answer of the witness sought to be stricken out is not responsive to the question addressed to him.

ID. — EVIDENCE — PERSUADING WITNESS TO LEAVE THE COUNTRY — ACTS OF THIRD PARTIES. — Upon such prosecution, evidence of a witness tending to show that the defendant persuaded and induced him to leave the country is admissible in so far as it shows the acts and declarations of the defendant, but evidence of acts or declarations of third parties in attempting to influence the witness, not in the presence of the defendant and unauthorized by him, is inadmissible.

ID. — MOTIVE IN LEAVING HOME — CROSS-EXAMINATION. — Where it has been shown, by the examination in chief of a witness for the prosecution, that the defendant induced him to leave the country for the purpose of escaping the effect of his evidence as a witness at the trial, it is proper, upon cross-examination, to ask him if the reason he left at that time was not on account of his father, and it is error not to allow such question to be answered.

ID. — DECLARATIONS OF DEFENDANT — EFFORTS OF DEFENDANT TO SECURE RELEASE OF ANOTHER PARTY. — Where it appeared that, subsequent to the date of the alleged larceny of horses charged in the information, a relative of the defendant and several other persons were arrested for stealing horses in another state, and while in confinement, pending examination and trial, the defendant earnestly exerted himself in various ways in attemping to secure the release of one of them, the statements of the defendant, made to various persons at that time, that he had promised a large sum of money to secure the release of such person, and that he had made arrangements to break into the jail and get him away, were too remote to be admissible in evidence against the defendant, and tended to prejudice the jury against him.

ID. — CONNECTION OF DEFENDANT WITH DISTINCT OFFENSE — GENERAL SCHEME OF HORSE-STEALING. — The declarations of the defendant, so far as referring to his connection with a distinct offense of horse-stealing, are incompetent, but his declarations, so far as referring to a general scheme or plan of horse-stealing, or horse-stealing as a business, are competent, and admissible against him.

ID. — HYPOTHETICAL INSTRUCTION — PRACTICE NOT COMMENDED. — The practice of giving in criminal prosecutions, at the request of the prosecution, a charge to the jury in the nature of a hypothetical question, embracing practically the prosecution's theory of the case, and including a large portion of the evidence, is not to be commended.

APPEAL from a judgment of the Superior Court of Lassen County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*A. L. Shinn, R. P. Clement*, and *Clark & Jones*, for Appellant.

*Attorney-General Hart, Deputy Attorney-General Layson, Clay W. Taylor, F. A. Kelley, M. Marsteller*, and *J. W. Parker*, for Respondent.

GAROUTTE, J. — Defendant was convicted of the crime of grand larceny, and appeals from the judgment, upon a bill of exceptions. Counsel for appellant relies upon many alleged errors of law committed by the trial court for a reversal of the judgment. The assignments of

error, based upon the orders of the court refusing to set
aside the information, resetting the case for trial, and
denying the application for a continuance, are not well
taken. The court committed no error in admitting the
evidence of the witness Buckmaster as to the statement
of Otis Dixon, made in the absence of the defendant.
Otis Dixon was jointly charged with the defendant and
one Arthur Sylvester with the crime of grand larceny in
stealing the horses described in the information; the
witness had already testified to facts tending to show a
conspiracy between these parties, and his subsequent
testimony pointed in the same direction. The evidence
of conspiracy was sufficient to go to the jury, and the
commission of the crime not yet being complete, any
statement of a co-conspirator was admissible against the
defendant. In *People* v. *Geiger*, 49 Cal. 649, this court
said: " We think there was sufficient evidence of the
conspiracy between Alexander and the defendant to
justify the court in admitting in evidence the declara-
tions of the former, made previous to the alleged killing.
The question of conspiracy was then submitted to the
jury, with instruction to disregard the declarations of
Alexander unless the conspiracy was satisfactorily
proved. This was the proper practice." (See also *Peo-*
*ple* v. *Collins*, 64 Cal. 295; *People* v. *Bentley*, 75 Cal. 409.)

Otis Goodlow testified that Joshua Buckmaster and
Henry Goodlow arrived at the ranch of witness's father
in Oregon. The next morning he (the witness) went
out into the field and saw the horses alleged by this
information to have been stolen.

" Q. What did you do, — you drove them up? A. Yes,
sir, and I asked Josh whose horses them was, and he
said they were Ellery Dixon's."

Counsel for appellant made no objection to the ques-
tion, but moved to strike out the answer, as incompetent
and hearsay, which motion the court denied. This rul-
ing was error. Buckmaster's statements to the witness
could not be admitted in evidence against the defendant,
Dixon. It has been decided by this court that where no

objection is made to an interrogatory, a motion to strike out the answer comes too late. (*People* v. *Long*, 43 Cal. 446; *People* v. *Samario*, 84 Cal. 485.) The rule is a salutary one, and should be upheld, unless good cause to the contrary appears. In this case the reason of the rule is not present, and appellant should have the benefit of his exception. The answer of the witness was not responsive to the question addressed to him, and for that reason the principle laid down in the foregoing cases has no application.

It was attempted to be shown by the evidence of the witness Goodlow that the defendant, Dixon, and Otis and Ira Dixon, persuaded and induced him to leave that section of the state. It was shown by the witness that Ira Dixon and one Sylvester each gave him money, presumably to be used in leaving the country. This character of evidence, to the extent that it showed the acts and declarations of the defendant, was admissible, but as to any evidence of acts or declarations of third parties in attempting to influence the witness, not in the presence of the defendant and unauthorized by him, it was error to admit it. Upon cross-examination the witness was asked "if the reason why he left home that time was not on account of his father." An objection was sustained to the question, which ruling is error. If it was proper to show by the examination of the witness in chief that the defendant induced him to leave the country for the purpose of escaping the effect of his evidence as a witness at the trial, then the question asked by the defense was in the direct line of cross-examination, as tending to neutralize and dissipate the effect of the previous testimony of the witness as to the cause of his absence.

Some weeks subsequent to the date of the alleged larceny charged in the information, " Josh " Buckmaster, Arthur Sylvester, a half-brother of defendant, and others, were arrested in Oregon for stealing horses there, and while in confinement, pending examination and trial, the defendant, Dixon, earnestly exerted himself in various ways in attempting to secure Buckmaster's liberty.

Under objection of defendant, his statements to various persons made at that time, " that he had promised a party one thousand dollars to release Josh from jail," " that he had made arrangements to break into the jail and get him away," and much more to the same effect, were offered in evidence. This character of evidence placed the defendant in a bad light, and tended strongly to prejudice the minds of the jurors against him, but it appears to be entirely too remote to be admitted in the case. It is only upon the conjecture that his deep interest in the escape of Buckmaster from prison was owing to his fear that the prisoner might reveal his (defendant's) previous criminal history that the evidence could be in any manner admissible. It could as readily be conjectured that his conduct was attributable to the unwise and unscrupulous zeal of an over-zealous friend, or that his contemplated assistance to Buckmaster was occasioned by his desire thereby to indirectly assist his brother, who at that time was charged with the same crime. The evidence was damaging to defendant, and in its nature so remote and conjectural that the objection to its admission before the jury should have been sustained. During one of those conversations to which allusion has just been made, a witness testified that he asked the defendant "if he did have anything to do with that horse-stealing business, or handling of the horses." "He said he did; and I asked him why it was he did it, and he said, ' Well, he had been running a real estate office in Bieber, and that he had been running behind and was in debt some, and was superintendent of a Sunday school, and that nobody would suspicion him, and that was just as good a way to make money as he knew of.' " These statements of the defendant to the witness, if they referred to the "horse-stealing business" for which Buckmaster was then in jail, were clearly incompetent. If the questions and answers referred to a general scheme or plan of horse-stealing, or to horse-stealing as a business, then the evidence was properly admitted. The record is not clear as to the exact con-

nection in which the statements were made, although it does appear that at this time the public had no information as to the larceny of the horses involved in the charge against defendant, and even the owner thereof did not at that time know that his horses were stolen.

We see no error in the instructions of the court. One of the charges given to the jury at the request of the people is in the nature of a hypothetical question, embracing practically the prosecution's theory of the case. It includes a large portion of the evidence, and is necessarily long drawn out and somewhat obscure and unsatisfactory. While we cannot say that it is erroneous, the practice of giving such instructions is not to be commended. It is not calculated to enlighten the jury upon the law which should guide them in their deliberations in the jury-room, and as a general rule such instructions furnish ample grounds for the reversal of judgments in criminal cases.

Let the judgment be reversed, and the cause remanded for a new trial.

McFARLAND, J., SHARPSTEIN, J., PATERSON, J., HARRISON, J., and DE HAVEN, J., concurred.