[Crim. No. 118.    Third Appellate District.—June 18, 1910.]

THE PEOPLE, Respondent, v. ISAAC T. DAVENPORT, Appellant.

CRIMINAL LAW—RAPE WITH GIRL UNDER AGE OF CONSENT—INSTRUCTIONS—CONSENT—PRIOR WANT OF CHASTITY.—Upon a prosecution for rape by defendant in having sexual intercourse with a girl under the age of consent, the court, after stating to the jury that her consent was immaterial, further properly instructed them that it is immaterial whether the prosecutrix was of previous chaste character at the time of the alleged offense; that want of chastity of a female under the age of consent is no defense to the charge of rape upon her, and that any statement reflecting on her previous chastity is to be disregarded.

ID.—PRIOR UNCHASTE RELATIONS NOT PROVED—DECLARATION AS TO CAUSE OF "CONDITION"—IMPEACHING EVIDENCE.—Where there was no direct evidence of prior unchaste relations between the prosecutrix and other persons, the testimony of a witness merely to an oral declaration of plaintiff that defendant was not responsible for her

"condition" was in the nature of impeaching evidence, and cannot be considered as evidence of want of chastity.

Id.—Rule as to Impeaching Evidence—Statement not Proof of Fact. The rule is that impeaching evidence by a contradictory statement does not tend to establish the truth of the matter contained therein, but only tends to affect the credibility of the witness impeached thereby.

Id.—Instruction—Caution as to Oral Declarations—Matter of Fact—Harmless Commonplace.—While an instruction that the testimony of the oral declaration of a witness or party is to be received with caution is as to a matter of fact, yet it is held to be harmless as stating mere commonplace matter within the general knowledge of the jury, the giving of which is not ground of reversal.

Id.—Instruction as to Presumption of Innocence—Proof—Reasonable Doubt.—An instruction that "the defendant is presumed to be innocent until his guilt is clearly established by the evidence," that "all presumptions of law are in favor of the innocence' of persons accused of crime, and every person so accused is presumed to be innocent until the contrary is shown, and until his guilt is established by the evidence in the trial of the case, and this presumption of innocence remains with the defendant in every stage of the trial until it is overcome by the evidence," is not objectionable as using the word "shown" instead of "proved," nor for the omission of proof "beyond a reasonable doubt," where the law of "reasonable doubt" is fully stated in other instructions, so that the jury could not be misled as to the measure of proof required to overcome the presumption of innocence.

Id.—Evidence—Concealment of Witness by Defendant—Question for Jury.—Where the district attorney introduced a witness who was at defendant's house when the offense in question was committed, and learned something about it from defendant, who stated that defendant directed him not to tell anything about the story, but to say "no" to everything asked of him, and that defendant sought to have him conceal his identity, but told his father "that the witness got into trouble, and he had to keep him out of the way," it was a question for the jury to determine whether the testimony indicated the purpose of defendant to suppress testimony against himself, or to shield the witness from trouble.

Id.—Cross-examination—Trouble With Girl at Defendant's House. On cross-examination, defendant had the right to show that the witness had trouble with a girl at defendant's house, and that defendant's concealment of the witness was to shield him from that trouble.

Id.—Prejudicial Re-examination—Instigation of Trouble by Defendant.—Such cross-examination did not open the way for a re-examination to go into the details of such collateral and distinct offense at defendant's house, on the part of the district attorney,

in a manner highly prejudicial to defendant, by showing that defendant instigated and encouraged such offense, and told the girl to go upstairs with the witness. Such re-examination grossly transgressed the rights of the defendant.

ID.—PROPER CROSS-EXAMINATION OF DEFENDANT—TEST OF MEMORY.—Where defendant claims an alibi in spending the night in question on an oil barge, the district attorney, on cross-examination, had the right to test his memory by asking as to his movements on the nights previous and subsequent to the date of the offense, and to ask him if it was not on one of those nights that he was on the barge. The prosecution may seek, on cross-examination, to bring out evidence tending directly to explain, qualify or contradict the defendant's testimony.

ID.—CROSS-EXAMINATION OF PROSECUTRIX—VISIT TO DOCTOR WITH DEFENDANT—PREJUDICIAL ERROR.—Where, on direct examination of the prosecutrix, it was proved that she visited a doctor with the defendant, the defendant had the right to show on cross-examination that she had had intercourse with another person, not to prove that she was unchaste at the time of the alleged offense, but to resist the inference that the defendant was responsible for her condition, and defendant was entitled to the utmost latitude, on cross-examination, to rebut that inference, and it was prejudicial error to disallow such right.

ID.—MISCONDUCT OF DISTRICT ATTORNEY—PREJUDICIAL COMMENT ON COLLATERAL OFFENSE.—It was misconduct of the district attorney to comment on defendant's instigation of the collateral offense, which was improperly admitted, and was calculated to arouse bitter resentment against defendant on the part of the jury, and to disqualify them to view dispassionately and fairly the evidence against the defendant upon the particular charge in the information.

ID.—RIGHT OF DEFENDANT TO FAIR CONVICTION.—If a defendant cannot be fairly convicted, he should not be convicted at all; and to hold otherwise would be to provide ways and means for the conviction of the innocent.

ID.—SUFFICIENCY OF INFORMATION—OFFENSE CHARGED IN LANGUAGE OF STATUTE—WORDS NOT REQUIRED.—The information for rape, in this case, conforming to the language of the statute defining it, was sufficient, and a demurrer thereto was properly overruled. It was not necessary to use the word "feloniously," nor to allege that the act was "willfully" done. When it is alleged that a person does an act, it implies willfulness.

ID.—SUPPORT OF VERDICT.—The evidence was sufficient to support the verdict. The testimony of the prosecutrix was sufficient for that purpose, though there was additional evidence lending aid to the inference of guilt.

ID.—REVERSAL ON OTHER GROUNDS.—On the other grounds above stated, the verdict cannot be upheld.

APPEAL from a judgment of the Superior Court of Yolo County, and from an order denying a new trial. N. A. Hawkins, Judge.

The facts are stated in the opinion of the court.

J. R. Hughes, and Arthur C. Huston, for Appellant.

U. S. Webb, Attorney General, and J. Charles Jones, for Respondent.

BURNETT, J.—Appellant seeks a reversal of the judgment and the order denying his motion for a new trial upon the grounds that the court committed error in the giving and refusing of instructions and in its rulings upon the admissibility of evidence during the trial, that the district attorney was guilty of prejudicial misconduct, that the demurrer to the information was improperly overruled and the evidence is insufficient to support the verdict.

1. The portion of instruction No. 4 given by the court, to which criticism is directed, reads as follows: "It is wholly immaterial whether Martha J. McManus, the prosecuting witness, was of previous chaste character or not, at the time of the alleged offense. Want of chastity of a female under the age of sixteen years is no defense to a charge of rape upon her. Any statement reflecting on the previous chastity of Martha J. McManus is to be wholly disregarded by you." It is admitted that, "as an abstract proposition of law these expressions are probably correct," but it is contended that they were erroneous by reason of the fact that certain evidence admitted by the court as to improper relations between the prosecutrix and parties other than the defendant was material in the determination of the question whether the act charged against the defendant in the information really occurred. But it is apparent that the court was dealing with the particular phase of the law involved in the suggestion that it might be no crime to have sexual intercourse with a female under the age of consent if she was of previous unchaste character. The court had stated that it was immaterial whether the prosecutrix had consented or not to the act of intercourse, and then proceeded to declare, substantially, that "for the same reason" it was im-

material what was her previous character as to the element in question, and therefore any statement reflecting on her previous chastity should be disregarded.

But appellant is mistaken in the contention that the court admitted evidence of the relations existing between the prosecutrix and persons other than the defendant. Mrs. Manchester testified that the prosecutrix had stated to her that the defendant was not responsible for her "condition." What was meant by "condition" does not appear, but attributing to it the scurrilous signification contended for, there is no evidence as to when the "condition" originated, and, besides, it is only impeaching testimony and therefore could not be considered as evidence of the want of chastity. The rule is that "impeaching testimony does not establish, or in any way tend to establish, the truth of the matters contained in the contradictory statements.". (3 Jones on Evidence, 861.) The purpose of such testimony is, of course, as the term implies, to affect the credibility of the witness impeached and an instruction to that effect would have been proper had appellant desired it.

The court instructed the jury as follows: "I instruct you that the testimony of the oral declaration or admission of a witness or party should be viewed with caution." It is the contention of appellant that this has been before the supreme court many times for construction and it has been held to be in conflict with section 19 of article VI of the constitution of the state, which provides that: "Judges shall not charge juries with respect to matters of fact; but may state the testimony and declare the law." In support of the position these cases are cited: *Kauffman* v. *Maier,* 94 Cal. 269, [29 Pac. 481]; *People* v. *Rodley,* 131 Cal. 240, [63 Pac. 351]; *People* v. *Wardrip,* 141 Cal. 229, [74 Pac. 744]; *People* v. *Buckley,* 143 Cal. 375, [77 Pac. 169]; and *Gross* v. *Steiger Terra Cotta etc. Works,* 148 Cal. 155, [82 Pac. 681]. Appellant seems to place a proper construction upon those decisions. It is equally true, however, as admitted by appellant, that these authorities "take the view that such an instruction is harmless, for the reason that 'it states mere commonplace matter within the general knowledge of the jury.'" Indeed, the language used in *People* v. *Wardrip,* 141 Cal. 229, [74 Pac. 744], is that the instruction "states a mere commonplace

within the general knowledge of jurors; and we do not think that either the giving or refusing of such an instruction would warrant a reversal.'' It may be, as insisted by appellant, that upon further consideration, the supreme court will hold that such an instruction is not only violative of the constitution but also prejudicial to the defendant, but the propriety of our declination to anticipate and forestall such a decision must be apparent.

Some of appellant's objections to instruction No. 8 seem quite hypercritical. Therein the jury were told that ''The defendant is presumed to be innocent until his guilt is clearly established by the evidence. All presumptions of law are in favor of the innocence of persons accused of the commission of crime, and every person so accused is presumed to be innocent until the contrary is shown and until his guilt is established by the evidence in the trial of the case, and this presumption of innocence remains with the defendant at every stage of the trial unless it has been overcome by the evidence.'' The use of the word ''shown'' is criticised, but it is apparent that it was employed in the sense of ''proved.'' It was not necessary for the court to repeat the expression ''beyond a reasonable doubt,'' as in other portions of the charge the jury were told repeatedly that the prosecution must prove the charge to a moral certainty and beyond all reasonable doubt. Upon this point one of the instructions was: ''Before you can convict the defendant you must be satisfied from the evidence that he is guilty beyond all reasonable doubt. A bare preponderance of the evidence in support of a criminal accusation against the defendant is not sufficient to warrant his conviction, but on the trial of this and all other criminal causes, the guilt of the defendant must be established to the satisfaction of the jury to a moral certainty and beyond a reasonable doubt, or he should be acquitted.'' They were further instructed that ''the burden of the proof never shifts, but remains upon the prosecution throughout the whole case to prove the defendant guilty beyond a reasonable doubt.'' The jury could not, therefore, have understood from the criticised instruction that a less degree of proof was required of the prosecution than ''beyond a reasonable doubt.''

There is some ground for the objection to the instruction in reference to its statement of the presumption of innocence.

The language is not as clear as it should be, but we think the jury could not have been misled thereby.

In *People* v. *McNamara*, 94 Cal. 514, [29 Pac. 953], cited by appellant, the instruction was: "And the presumption 'of innocence goes with him all through the case, *until it is submitted to you.*" The supreme court properly said that "the presumption of innocence does not cease upon the submission of the cause to the jury, but operates in favor of the defendant, not only during the taking of the testimony, but during the deliberations of the jury, until they have arrived at a verdict." But appellant's contention is directly answered by the case of *People* v. *Arlington*, 131 Cal. 231, [63 Pac. 347]. The language there, being almost identical with what we have here, was, "and it is a presumption that abides with him throughout the trial of the case until the evidence convinces you to the contrary beyond all reasonable doubt." In commenting upon this language and in reply to the suggestions of appellant, the supreme court said: "We do not think the language conveyed the impression that the presumption ceased to operate at the close of the evidence of the prosecution or at any time before the jury had finally determined upon a verdict. The court meant, and we think must have been by the jury understood to mean, that the presumption remained to the last with the defendant and until in their deliberations upon the evidence they became convinced of his guilt. When the jury reached that conclusion on the whole evidence and beyond a reasonable doubt, of course, the presumption disappeared and should disappear." The instruction upon this subject requested by defendant, it may be remarked, has been approved by the supreme court as an entirely accurate statement of the law and might well have been given by the trial judge, but, as already declared, we think the jury were substantially so instructed.

2. One George Blohm was allowed to testify to certain movements made by him upon the contention of the district attorney that they were directed by the defendant for the purpose of having the witness concealed that he might not be called to testify at the trial. It appears that the witness was at Mr. Davenport's house at the time the offense is claimed to have been committed and acquired knowledge of certain facts incriminating the defendant. He testified that he was di-

rected by Davenport "not to tell any more about the story and say no to everything they would ask me," and also "to change my name and say it was George King," and furthermore that the defendant went to Roseville and brought the witness down to Sacramento and directed him to conceal his identity in crossing the Sacramento river and they went together to San Francisco, and defendant told the father of witness that "I got in some trouble up here and he had to send me to Roseville and keep me out of the way."

It was for the jury to determine whether this testimony indicated a purpose on the part of defendant to suppress testimony against himself. Any act or declaration on his part in pursuance of that object, it is admitted, would be admissible; and while the testimony thus far detailed of the witness Blohm might be construed as indicative of defendant's desire to shield said Blohm, it was for the jury to determine whether that was the motive of defendant or whether he was trying to further his own exculpation. The evidence was probably admissible, since a rational inference might be drawn from it that defendant thereby manifested a consciousness of guilt.

The witness was then asked the question: "Had you been in trouble?" and he answered, "No, sir," and then he qualified the answer by adding, "Not at Roseville, no." On the cross-examination he said the trouble he was in related to his conduct with Gladys Bryant at Mr. Davenport's house. On the redirect examination he was permitted to state, over objection, that the defendant was present when the incident occurred with Gladys Bryant, and that he told the girl to come upstairs. The witness was persistently questioned in regard to the matter by the district attorney, and he stated quite positively that the defendant encouraged and advised the unseemly conduct on the part of the witness and the said Gladys Bryant. The evidence was admitted on the theory, as stated by the court, that "the matter was brought out on cross-examination as to the cause of his trouble, and the cause of the trouble having come in, it is admitted solely for the purpose of explaining the trouble." But we think the prosecution was allowed to go too far. The direct examination was for the purpose of showing that the defendant endeavored to conceal the witness to prevent him from giving adverse testimony on the present charge. During this examination it devel-

oped that the defendant had told the father of the witness that the latter had gotten into trouble and that on this account he sent the witness to Roseville and kept him out of the way. It was certainly proper for the defendant, on cross-examination, to show by the witness that this statement was true, that he did have trouble and that it was on this account that the defendant sought to conceal him. This did not open the door for a recital, at the instance of the district attorney, of the details of that separate offense in a manner so calculated to prejudice the defendant. It was entirely collateral to the main question, which was whether the boy's trouble or the present charge against the defendant was the moving cause of the so-called attempt to conceal said witness. It was not the occasion for explaining the boy's trouble in the sense of permitting an inquiry beyond its general nature, and the rule invoked did not sanction evidence of a separate offense which could not fail to be of decisive importance in the estimation of the jury. If the evidence had been offered on the direct examination of the witness no one would deny that it should have been rejected. As presented it was no less objectionable. It is within the principle announced in *People* v. *Fong Chung*, 78 Cal. 174, [20 Pac. 396], and *People* v. *Altmeyer*, 135 Cal. 82, [66 Pac. 974]. If the jury believed the testimony of Blohm, the effect upon their minds can be easily imagined. It would require little, if any, additional evidence to induce a conviction of defendant.

It is undoubtedly true, as said by the supreme court in *People* v. *Baldwin*, 117 Cal. 249, [49 Pac. 187], that "In this class of prosecutions the defendant, owing to the natural instincts and laudable sentiments on the part of the jury, and the usual circumstances of isolation of the parties involved at the commission of the offense, is, as a rule, so disproportionately at the mercy of the prosecutrix's evidence, that he should be given the full measure of every legal right in an endeavor to maintain his innocence." Scarcely anything could more fully arouse the just indignation of the jury or awaken a spirit of resentment against the defendant than such a recital as was given by said witness. We cannot but feel that the defendant's rights were grossly transgressed in this respect.

There was no error committed in the cross-examination of defendant. Complaint is made that the district attorney was

permitted to ask him as to his movements at other times than
the occasion involved in the charge. The questions were lim-
ited, however, to the preceding and the succeeding night.
This was entirely proper to test the accuracy of his memory
as to where he was at the time of the alleged offense and also
to throw a side light upon the validity of his explanation of
his movements on the said night of September 30th. He had
stated in the direct examination that he had spent that night
on the oil barge down the river, and he had done so because
he had seen some tramps near the place and he was afraid
that they might steal something. Of course, it would have
been proper for the district attorney to ask him if it were
not the night before or the night after instead of the night
in question that he stayed on the barge. This was the effect
of the cross-examination, and besides, the answers disclosed
nothing prejudicial to the defendant. There is no doubt that
the prosecution may seek, upon cross-examination, to bring
out evidence which tends directly to explain, qualify or con-
tradict his testimony. (*People* v. *Arrighini*, 122 Cal. 127, [54
Pac. 591].)

On the direct examination of the prosecutrix the district
attorney asked this question: "Did you prior to that time
[the arrest of defendant] go with Mr. Davenport to a doctor's
office in Sacramento?" and the witness answered, "Yes, sir."
No inquiry was made as to the purpose of the visit or as to
what occurred there, but it would seem that only one inference
—not necessary to state here—could be drawn from the testi-
mony. On cross-examination it was sought to show by the
witness that on the 30th of September—at the time when the
offense is charged against the defendant—she had intercourse
with another person and she was further asked the question:
"After going into the front room, Mrs. Manchester said to
you, 'Martha, who was it got you in the fix?' You says, 'I
don't know.' Mrs. Manchester says, 'Was it Del Lawrence
or any of his company?' You said, 'No.' Mrs. Manchester
said, 'Is it the man with the glasses?' You said, 'No.' Mrs
Manchester said, 'Is it Mr. Davenport?' You said 'No.'
Mrs. Manchester said, 'Haven't you any idea who it was,
Martha?' You said, 'You know who it was, it was Gussie
Deuche.' Were these things said?" The questions were an-
swered but after some discussion the court virtually excluded

13 Cal. App.—41

the testimony from the consideration of the jury, stating, ''You can ask any question in regard to any act or contradiction of any act of this defendant, but I will exclude the testimony in reference to any condition of the little girl.'' As we have already seen, the evidence would not be admissible for the purpose of showing her unchastity at the time of the alleged offense, but if it had a logical tendency to rebut any unfavorable inference against the defendant that might be drawn from any act testified to on the direct examination, it should have been admitted for that purpose. Indeed, that was the ground upon which defendant bases his contention that it was proper cross-examination, stating to the court: ''Your honor has permitted evidence to go in here that this defendant took this girl to a doctor, the district attorney will argue from that he took her there from an ulterior motive, and that is the inference to be drawn. Haven't we a right, on cross-examination, to show, as against her testimony on that point, that immediately and at that time she denied that Davenport was responsible for her condition, and if she denied that Davenport was responsible for her condition, isn't that legitimate testimony for us to take before the jury to argue that this evidence of her going to the doctor is of no detriment to us?'' The answer of the district attorney to this contention was: ''We haven't proved any evidence in this case that this girl was in any condition whatever.'' But the jurors, not possessing the technical skill, perhaps, of the district attorney in making nice distinctions or in turning phrases, would not be slow to conclude as to what her condition was that seemed to make it necessary for the defendant to take her to see a doctor, and the defendant should have been allowed the widest latitude to rebut the unfavorable inference necessarily drawn from said testimony.

3. Appellant complains bitterly of the conduct of the district attorney in asking improper questions and in transgressing the limits of official decorum in his argument to the jury, thereby depriving defendant of a fair and impartial trial.

Everyone familiar with the execution of the criminal law knows that to convict the guilty when ably defended by attorneys of high standing at the bar and in the community, the district attorney must be not only a man of consequence

but he must exhibit industry and zeal commensurate with the importance of the case and the gravity of the opposition, but he should, of course, be mindful of the rights of the defendant and endeavor to maintain that equipoise of judgment and demeanor so becoming to one engaged in the pursuit and administration of justice.

The only specification in this regard, though, that we consider of sufficient importance to notice is the comment made by the district attorney carrying the implication that the defendant was guilty of another offense in his treatment of the witness George Blohm. The remarks were calculated to arouse the most bitter resentment on the part of the jury and to disqualify them to view dispassionately and fairly the evidence against the defendant upon the particular charge in the information.

It is true, as said in *People* v. *Wells,* 100 Cal. 459, [34 Pac. 1078], that "If a defendant cannot be fairly convicted he should not be convicted at all; and to hold otherwise would be to provide ways and means for the conviction of the innocent."

4. The demurrer to the information was properly overruled. It was not necessary to use the word "feloniously," as the offense was described in the language of the statute. (*People* v. *Olivera,* 7 Cal. 403; *People* v. *Murray,* 10 Cal. 309; *People* v. *Garcia,* 25 Cal. 333.) Nor was the district attorney required to aver that the act was "willfully" done. When it is alleged that a person does an act it implies willfulness.

5. There is no merit in the claim that the evidence is insufficient to support the verdict. The testimony of the prosecutrix was sufficient for that purpose. There was also additional evidence lending aid to the inference of guilt, but for the reasons stated we cannot uphold the verdict.

The judgment and order are reversed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 11, 1910.