[Crim. No. 706.   Third Appellate District.—September 25, 1923.]

## THE PEOPLE, Respondent, v. NELLIE DEMPSEY, Appellant.

[1] CRIMINAL LAW—GRAND LARCENY—TAKING MONEY FROM PERSON—EVIDENCE.—In this prosecution for grand larceny alleged to have been committed by the defendant by taking from the person of the prosecuting witness a wallet containing currency, the circumstances developed by the testimony in the case were of sufficient probative significance and force to warrant the jury in concluding that the defendant did take the money from the person of the prosecuting witness.

[2] ID. — EVIDENCE — OFFER OF SETTLEMENT—ACQUIESCENCE OF DEFENDANT—INFERENCE—CONSCIOUSNESS OF GUILT.—In such prosecution, testimony of the offer by a woman companion of defendant, made shortly after the taking of the complaining witness' wallet and his discovery of its loss, to reimburse the complaining witness for his loss was admissible where such offer was made in the presence of defendant and her silence or failure to protest against the reimbursement constituted a circumstance from which the jury could reasonably have drawn the inference that she acquiesced in the act of thus settling the matter; in other words, defendant's failure to make any protest against the settlement of the trouble by her companion constituted some evidence of a consciousness of guilt.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order denying a new trial. George H. Thompson, Judge Presiding.   Affirmed.

The facts are stated in the opinion of the court.

Gaddis & Thompson for Appellant.

U. S. Webb, Attorney-General, and ·J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—Convicted by a jury under an information filed in the superior court of Sacramento County, charging her with the crime of grand larceny, the defendant prosecutes an appeal from the judgment of conviction and the order denying her motion for a new trial, and specifies as the grounds upon which she is entitled to a reversal that the evidence is insufficient to support the verdict and that the court erred in admitting certain testimony.

The specific charge was that the defendant took from the person of one Edwin McKay a wallet containing $16 in currency, consisting of a $10, a $5, and a $1 bill. (Sec. 487, subd. 2, Pen. Code.)

The story as told upon the witness-stand by said McKay is in substance as follows: That on the evening of January 5, 1923, about the hour of 9 o'clock, he started from the residence of a friend on Tenth Street, between G and H, in the city of Sacramento, and proceeded toward the residence of his cousin at 816 Eleventh Street in said city. He was walking on the south side of H Street, between Tenth and Eleventh, when he saw two colored women, one of whom was the defendant, coming down the steps of a house near Eleventh and H Streets. He proceeded, walking on the outside of the sidewalk, and when about to pass the women the defendant addressed him, saying, "Hello." Thinking that it was some acquaintance who had thus addressed him, he turned and looked toward the women and the defendant immediately stepped in front of him and said, "Come and go with me," and at the same time grabbed him by the lapel of the coat. He replied that he would not accompany her and asked her "to let go of him." He extricated himself from her grasp and resumed his way to his cousin's house. On arriving there he told of the circumstance of having been thus accosted by the defendant and it was then either suggested to him or occurred to his mind without suggestion that he might have been robbed. He thereupon examined the right pocket of his coat in which he carried his wallet and found that that article was missing. Immediately he started out to find the colored women whom he had met on the street, but first called to his assistance a

friend by the name of Mr. Palm, and together they pro-
ceeded over to I Street through a plaza between Ninth and
Tenth and I and J Streets toward the Pythian Castle, which
is located on the northwest corner of Ninth and I Streets.
Just before starting across the street he espied the two
women going toward the Pythian Castle from the direction
of Eighth Street and he declared to his friend that they
were the women whom he had met on Eleventh Street.
McKay and Palm crossed over and intercepted the women
and the former accused the defendant of having robbed him
of his wallet and the money therein contained. She posi-
tively declared that she had never seen him before and denied
knowing anything about his wallet or money. A contro-
versy ensued, whereupon the companion of the defendant,
whose name was subsequently learned to be Ruby Roberts,
offered to give McKay a $20 bill which she had in her hand.
He stated that he did not want the $20 bill; that all he
wanted was the return of his wallet and the $16 that were
therein at the time the wallet was taken. Finally, how-
ever, McKay accepted the $20 bill and in the meantime, the
police department having been notified of the alleged lar-
ceny, two police officers appeared at the corner where the
parties were engaged in the controversy and arrested the
defendant, her companion having previously fled from that
locality. McKay testified that, when Ruby Roberts offered
him the $20 bill, the defendant said: "Maybe I can make
it up all right." The defendant was taken to the police
station by the officers and was there searched, but the wal-
let was not found in her possession. On the next day, how-
ever, about 11 o'clock in the forenoon, the janitor of the
Pythian Castle, who then resided in the basement of said
building, accompanied by another gentleman, went out upon
the sidewalk and looked about to ascertain if the wallet of
McKay or any other article had been dropped or left there
by either the defendant or her companion. Growing along-
side of the Pythian Castle are a large number of geraniums,
and after considerable searching the janitor found under-
neath one of the geraniums an empty wallet, which was
identified by McKay as the one he had in his possession the
night that he met the defendant and her companion,
and which contained at that time the $16 in currency. Mc-
Kay positively testified that he remembered having placed

the wallet in his coat pocket about an hour previously to meeting the women, he having changed his clothes and taken all the articles in those discarded and placed them in the pockets of those he put on.

The testimony of McKay was corroborated in many vital particulars by Mr. Palm and other witnesses.

The defendant's companion, Ruby Roberts, it seems, was not arrested, nor was she present in court at the time of the trial. The defendant, although admitting that she and Ruby Roberts met McKay at the time mentioned by him, positively testified that she did not place her hand upon his person and did not take his money or any other personal property from him. She did state, however, that Ruby Roberts had a conversation with McKay and also stated that McKay was the first to open up a conversation with them. She testified that she had no knowledge of any property or article having been taken from McKay at that time by anybody.

[1] It is clear that the circumstances developed by the testimony were of sufficient probative significance and force to warrant the jury in concluding that the defendant did take the money from the person of McKay. In other words, we think the case was one for the jury and that consequently it is not for this court to say that the jury's conclusion, as evidenced by its verdict, was founded upon an erroneous interpretation or conception of the circumstances. The effect of the testimony of the defendant was only to raise a conflict in the evidence. It was for the jury to determine whether her story was or was not true. We may add that from all the circumstances the jury could well have concluded that the defendant and Ruby Roberts were jointly concerned in the taking of the money. The fact that the defendant took hold of the lapel of the coat of McKay, as described by him, the fact that Ruby Roberts immediately offered to reimburse McKay after the latter had charged the defendant with taking his money, and the fact that his wallet was found near the place where the women were intercepted by McKay and Palm are all strong incriminating circumstances.

The case of *People v. Silva*, 48 Cal. App. 728 [192 Pac. 330], cited by the defendant, is much different in the facts from the present case. We will not review that case herein.

It is sufficient to say that there was in said case but one real circumstance upon which the people could rely for a conviction and that was the fact that the defendant had an opportunity to commit the crime. This we held was wholly insufficient to support a verdict of guilty, particularly in view of the fact that there was another party having equal opportunity to commit the offense.

[2] The objection is made that the court erred in permitting testimony of the offer by Ruby Roberts to reimburse McKay for his loss. There is no legitimate ground for objection to this testimony. The offer was made in the presence of defendant and her silence or failure to protest against the giving of the money to McKay constituted a circumstance from which the jury could reasonably have drawn the inference that she acquiesced in the act of thus settling the matter. In other words, her failure to make any protest against the settlement of the trouble by Ruby Roberts constituted some evidence of a consciousness of guilt.

The judgment and the order appealed from are affirmed.

Finch, P. J., concurred.