[Civ. No. 7378. First Appellate District, Division Two.—November 24, 1930.]

JAMES FINN, a Minor, etc., et al., Appellants, v. V. SULLIVAN, Respondent.

James F. Brennan, for Appellants.

Daniel W. Burbank, C. F. Laumeister, Henry Heidelberg and Pembroke Gochnauer for Respondent.

DOOLING, J., *pro tem.*—Plaintiffs and appellants appeal from a judgment against them in an action in which each sought a recovery for personal injuries. Dorothy Finn is the mother of James Finn, who, at the time of the collision out of which the action grows, was an infant three and one-half months old. Appellants were riding in an automobile operated by one George B. O'Neal, which was proceeding northerly on Potrero Avenue between Seventeenth Street and Sixteenth Street in San Francisco on May 6, 1929, at about 12:30 A. M., when a collision occurred with an automobile operated by respondent Sullivan. There were no eye-witnesses of the collision except the occupants of O'Neal's car and respondent. The testimony was sharply conflicting. Appellants' witness testified that Sullivan approached them driving on his left side of Potrero Avenue

at a high rate of speed, while O'Neal was driving on his own right side at less than twenty miles per hour; that to avoid a collision O'Neal turned to his left and at the same time respondent Sullivan swung to his right and the collision occurred. Sullivan, who was the only witness to the facts on his behalf, testified that he was at all times proceeding on his right side of Potrero Avenue at about five miles per hour and that the car driven by O'Neal was on the wrong side of the street and collided with his car head-on at a high rate of speed.

After the collision O'Neal was the only member of appellants' party to observe and talk to respondent. He testified that he got out of his car and walked over to Sullivan, who remained seated in his car, and asked him to get out and help take care of the injured people, to which Sullivan made no reply. O'Neal was then asked by counsel for appellants: ''What was his (Sullivan's) apparent condition at the time with reference to being intoxicated or otherwise?'' An objection that this called for the opinion and conclusion of the witness was sustained by the court. This ruling was error. (10 Cal. Jur., pp. 1003, 1004; *Bidwell* v. *Los Angeles Ry. Co.*, 169 Cal. 780, 784 [148 Pac. 197]; *People* v. *Monteith*, 73 Cal. 7, 8 [14 Pac. 373]; *People* v. *Sehorn*, 116 Cal. 511 [48 Pac. 495]; *People* v. *Hill*, 123 Cal. 51 [55 Pac. 692]; 22 C. J., p. 599, sec. 694.) Respondent urges that in the form in which it was asked the question was improper. In *People* v. *Monteith, supra*, the question approved in the opinion was almost identical in form.

We cannot agree with respondent that this error was not prejudicial. Sullivan's own testimony was that after the collision he left his car and went into a vacant lot and lay down, that he got up and went home about 2 A. M. and there had a drink of whisky and that his dazed condition was caused by injuries received in the collision. He denied that prior to the accident he had had any intoxicants to drink. A policeman who saw Sullivan at 6:30 A. M. testified that he was then drunk. In this state of the evidence if O'Neal had been permitted to testify that immediately after the accident Sullivan appeared to be drunk the jury might not only have concluded that he was intoxicated,

but for that reason might have discredited his testimony as to how the collision occurred. As it was, if they believed the policeman's testimony they may have concluded that Sullivan's intoxication at 6:30 A. M. was caused by the whisky he drank at 2 A. M., and that he was sober at the time of the collision. In a case where the evidence was so sharply conflicting and Sullivan's testimony stood uncorroborated by any other witness it is apparent that serious prejudice may have been suffered by appellants because of this ruling.

The probability that this may have been so is heightened by the following occurrence: The jury twice returned into court to ask that certain instructions be re-read to them. On the second of these occasions the court read to the jury an instruction containing the following language: "If, on the subject of the negligence of the said defendant, the evidence is equally balanced, both in weight, quality and convincing effect, the plaintiffs have failed to make out a case against that defendant, and in that event your verdict must be in favor of the defendant, Vincent Sullivan." The following colloquy then occurred between the foreman of the jury and the court:

"The Foreman: Will you read that instruction again, your Honor, slowly?

"The Court: Yes, I will read it slowly."

This request of the foreman gives force to the idea that some or all of the jurors may have felt that the scales of proof hung even. If so, the excluded testimony might well have been the added weight which would have swung the balance in favor of appellants.

█ Appellants complain of certain instructions given at the request of the respondent of which the following is typical: "If you find that plaintiffs, or any of them, were, or was, guilty of negligence, and that such negligence, however slight, was the proximate cause of, or proximately contributed to the injuries or damages suffered by them, or either of them, I instruct you your verdict must be in favor of the defendant, Vincent Sullivan."

That the instructions on contributory negligence were confusing to the jury is shown by the fact that they twice returned into court and had them re-read.

The instruction quoted and other similar instrucions in effect told the jury that the negligence of either plaintiff would bar a recovery by the other. This is not the law. (*Zarzana* v. *Neve Drug Co.*, 180 Cal. 32 [15 A. L. R. 401, 179 Pac. 203].) We pass by the obvious observation that a three and one-half months old infant cannot be guilty of negligence because the jury must have known that fact. But the jury may well, under these instructions, have imputed negligence of the mother to her child, if they believed her guilty of any.

Respondent's claim that there was no evidence which would support an award of substantial damages to the child finds its answer in competent medical testimony that the child suffered the fracture of four ribs and a depressed fracture of the skull, which, in the opinion of the physician called by appellants, caused injury to the brain tissue with a reasonable probability of future epileptic attacks or some marked behavior disturbance in later life.

Other claimed errors are not likely to recur on a second trial and need not be discussed.

Judgment reversed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 24, 1930.