[Crim. No. 3879. Second Dist., Div. Three. July 12, 1945.]

THE PEOPLE, Respondent, v. MARY DOLORES MOORE, Appellant.

William G. Kenney for Appellant.

Robert W. Kenny, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

FOX, J. pro tem.—This is an appeal by the defendant Moore from a judgment of conviction for grand theft and from the order denying her motion for a new trial.

On April 20, 1944, shortly after 10:30 p. m., the complaining witness, Jeffcott, and his companion, Metcalf, were passing on foot the Yacht Club Cafe in San Pedro, California. At that time appellant and the other defendant, Thiele (who has not appealed), drove up in an automobile, parked it in front of the cafe, and got out. Jeffcott asked the girls to come in and have a cup of coffee with them. The invitation was accepted. They left the cafe in about half an hour, got in the appellant's automobile, drove around talking for a while and left Metcalf at his hotel. Jeffcott and the girls then went to the Admiral Cafe. There they occupied a booth and ordered coffee. While they were waiting for the coffee to be served, Jeffcott and appellant played a game which involved his catching a dollar bill which she held. Jeffcott lost a dollar, took out his wallet and paid her a dollar bill therefrom. While his wallet was out, he showed the defendants a $100 bill, which was among the more than $400 in hundred, fifty, twenty and ten-dollar bills, which he had therein. Defendant Thiele complained of a headache and the appellant passed her a box containing some pills. Appellant asked Jeffcott if there were any Bing Crosby records in the Nickelodeon, so he left the girls in the booth and went over to the Nickelodeon, leaving his coffee, which had been served, on the table in the booth. Appellant joined him at the Nickelodeon and then they went back to the booth and drank their coffee. Shortly after he drank his coffee Jeffcott began to feel sleepy and groggy. They left the Admiral Cafe, got in the car, drove to a hill overlooking the city, and parked. Jeffcott fell asleep for a short time. They left this point after a time and drove to Jeffcott's hotel. When they got there the appellant said she was sleepy and asked him to go to Los Angeles with her to take defendant Thiele to her husband. Jeffcott agreed to ride to Long Beach with them and to take a Pacific Electric train from Long Beach back to San Pedro. They left the hotel and went for another ride. They stopped at a night club for cigarettes and coffee. They then went to another night club where they had sandwiches, and Jeffcott had a coca cola. He tried to dance but could not. Defendant Thiele in the meantime had telephoned her husband, and she told Jeffcott and appellant that he was very annoyed with her, and that she was not going home. She

said, "Let's go some place, and we will just stay all night." Appellant suggested that they go to a certain motel. They drove to the motel, arriving there about 5 a. m. Jeffcott went into the office of the motel and registered for all of them. They were assigned two apartments, a double and a single. He paid the rental in advance with a twenty-dollar bill which he took from his wallet. After another trip to downtown Long Beach they returned to their apartments at the motel. Jeffcott undressed and got in bed. He put his wallet under the pillow and placed his trousers over a chair. Appellant got in bed with Jeffcott with her clothes on. After they had been in bed a short time, there was a knock on the front door which defendant Thiele answered. She went into the bedroom and said she was going to have to go to Los Angeles to see her husband and asked them to take her. They agreed to do so. Appellant told Jeffcott to take a shower and "snap out of it." When he came out of the shower he found the girls were gone. He looked out of the window and saw their car leaving. He looked for his wallet and it was gone. He started to get dressed and discovered that his trousers were missing. He wrapped himself in a sheet, went to the motel office and reported the incident to the manager, who called the police. It was then about 6 a. m. From the time the party left the Admiral Cafe, and for several days thereafter, Jeffcott was groggy and sleepy. The grogginess got worse as the night in question wore on. It descended upon him in waves. He had had only two or three beers during the afternoon preceding that night and had no intoxicating liquors during the time he spent with the girls.

The foregoing evidence is contradicted in some particulars, either directly or by inference. On appeal, however, we must view the evidence most favorably in support of the jury's verdict and the ensuing judgment.

Appellant's first point is that the court committed error in granting the People's motion to reopen their case without a proper foundation being laid. This argument is based on subdivision 4 of section 1093, Penal Code. This section deals with the order of the proceedings at the trial of criminal cases. After providing, among other things, that the district attorney must open the case and offer the evidence in support of the charge and that the defendant may then open the defense and offer his evidence in support thereof,

it is provided in subdivision 4 that, "The parties may then respectively offer rebutting testimony only, unless the court, for good reason, in furtherance of justice, permit them to offer evidence upon their original case." The rule contained in this section with respect to the order of proof is not mandatory. In *People* v. *Willard* (1907), 150 Cal. 543 [89 P. 124], at page 551, it is said: "A court is warranted in departing from the order of proof prescribed by section 1093 of the Penal Code under proper circumstances. Whether it shall permit such departure is a matter committed to its sound discretion, and its action in that regard is not ground upon which error may be predicated, unless the discretion appears to have been grossly abused, and this abuse must affirmatively appear." (See, also, Pen. Code, § 1094; *People* v. *Beatty* (1933), 132 Cal.App. 376, 378 [22 P.2d 757].)

In the instant case the People rested during the afternoon session of the first day. The defense immediately opened its case. When court adjourned for the day appellant was on the stand under direct examination. When court resumed the next morning the deputy district attorney made a motion to reopen the People's case. He said: "We have one witness who has to be back on the job at 12:00 o'clock." No objection was then made and the motion was granted. It was not until a number of questions had been asked and answered that appellant's counsel suggested the impropriety of reopening the People's case. He had previously objected unsuccessfully to certain testimony of the witness "because it has no bearing on the case." It is thus apparent that appellant's objection to reopening the People's case was not timely made. Furthermore, there is no showing of any abuse of discretion in granting the motion.

Appellant's second point is that the testimony offered and received after the case was reopened was not relevant and was hearsay as to her and therefore inadmissible. This testimony was to the effect that one Zengri, who was a cousin of appellant, had approached Jeffcott, the complaining witness, during the morning of the first day of the trial and had told him that if he, Jeffcott, "would ease up a little" on some of his testimony, he would get his money back. Jeffcott testified that Zengri gave him $95 that afternoon in the wash room and $60 at dinner that night, and promised that he would receive the balance next morning. Jeffcott further testified

that he had eased up on his testimony, pursuant to his agreement with Zengri, by failing to tell all of the truth while he was on the witness stand. He also testified that he, the two defendants, and Zengri, had met in the parking lot before court convened on the second day of the trial, which was the day on which this testimony was given, and had a conversation. He testified they said it did not look so good for them, and defendant Thiele gave him $155, stating she had everything to gain and nothing to lose any more by giving him the money. The bailiff of the court testified that during the afternoon recess on the first day of the trial he had seen Zengri give Jeffcott money in the wash room, and had seen Zengri, the two defendants, and Jeffcott, in the hall together at various times.

Any conduct of a defendant subsequent to the commission of the offense with which he is charged that indicates a consciousness of guilt is relevant and admissible against him. (*People* v. *Jones* (1911), 160 Cal. 358, 366 [117 P. 176]; *People* v. *Singh* (1934), 136 Cal.App. 233, 242 [28 P.2d 416].)

Efforts to reimburse the prosecuting witness, or to suppress testimony against himself, indicates a consciousness of guilt on the part of a defendant, and evidence thereof is admissible against him. (*People* v. *Davenport* (1910), 13 Cal.App. 632, 639 [110 P. 318]; *People* v. *Dempsey* (1923), 63 Cal.App. 751, 755 [219 P. 1041].)

Generally, evidence as to the conduct of third persons in attempting to suppress testimony is inadmissible against a defendant where such conduct did not occur in his presence. (*People* v. *Dixon* (1892), 94 Cal. 255, 258 [29 P. 504]; *People* v. *Gilliland* (1940), 39 Cal.App.2d 250, 256 [103 P.2d 179].) However, if the defendant authorized the conduct of such third person in attempting to suppress testimony, evidence as to such conduct is admissible against such defendant. (*People* v. *Burke* (1912), 18 Cal.App. 72, 91-93 [122 P. 435].) Of course, it may be, and ordinarily must be, proved by circumstantial evidence that the third person who approached the prosecuting witness and attempted to reimburse him or suppress his testimony, was acting on behalf of the defendant in so doing, and was authorized by him to do so. (*People* v. *Burke, supra.*)

In the instant case, it was shown that Zengri was the cousin of appellant, and had talked with her about the case. There was nothing to indicate that he and Jeffcott were friends, nor was there any reason stated or suggested as to why he should

be handing Jeffcott money and promising to get him the balance of the $400 other than to have Jeffcott "ease up" on his testimony. Zengri, Jeffcott and the two defendants were together in the parking lot talking on the morning of the second day of the trial, at which time defendant Thiele gave the complaining witness an additional $155. From this evidence the jury was entitled to draw the inference that Zengri was authorized by the defendants to approach the complaining witness and attempt to get him to "ease up" on his testimony by reimbursing him. Therefore, the evidence of the conduct of Zengri was admissible against the appellant because it tended to show consciousness of guilt, and was not within the hearsay rule. (*People* v. *Burke, supra.*)

■ Appellant's next contention is that the comments and rulings of the trial judge indicated an opinion of her guilt which could not help but impress the jury. The first incident complained of is the court's comment expressing confidence in appellant's then counsel and exonerating him of any connection with the transaction by which the complaining witness was partially reimbursed for the money defendants were alleged to have stolen from him. This comment was unnecessary because no one had either accused or even intimated that counsel was in any way involved in the transaction. It does not appear, however, that the comment was prejudicial.

■ Another instance where it is claimed the trial court showed bias and prejudice against the appellant was in refusing to permit her counsel to go into the details and circumstances surrounding her prior conviction of a felony and in reprimanding counsel in pursuing that line of questioning after the court had ruled that such evidence was immaterial. Such evidence was not admissible. (*People* v. *Stevens* (1935), 5 Cal.2d 92, 100 [53 P.2d 133]; *People* v. *David* (1939), 12 Cal.2d 639, 646 [86 P.2d 811].) The reprimand was mild and not out of place in view of the court's previous ruling that such evidence was immaterial. Other complaints with respect to the comments and attitude of the trial judge are too trivial to justify specific mention.

■ Appellant also contends the court erred in permitting two police officers to testify that, on the morning of the theft, the complaining witness, Jeffcott, was not intoxicated. The officers testified as to his condition and appearance as they observed it, that they had seen many people under the influence of liquor, and that, in their opinion, he was not intoxicated. Such testimony was clearly admissible. (*People* v.

*Sehorn* (1897), 116 Cal. 503, 511 [48 P. 495]; *Finn* v. *Sullivan* (1930), 110 Cal.App. 38, 40 [293 P. 639]; 10 Cal.Jur. § 236, pp. 978-9.)

■ One of these police officers who testified he had seen people under the influence of narcotics "on numerous occasions" was permitted to express the opinion that Jeffcott was, on the morning in question, under the influence of narcotics. Sufficient foundation was laid for this testimony and it was admissible. (32 C.J.S. § 513, pp. 200-201; 20 Am.Jur. § 876, p. 737; *Miller* v. *Hamilton Brown Shoe Co.* (1911), 89 S.C. 530 [72 S.E. 397, 398, Ann.Cas.1913B 106]; see, also, *People* v. *James* (1944), 65 Cal.App.2d 709 [151 P.2d 572].)

■ Appellant further complains that the trial court committed prejudicial error in failing to instruct the jury on opinion evidence. This argument is based on the provisions of section 1127b, Penal Code, which provides, in general, that when, in a criminal case, the opinion of an expert witness is received in evidence, the court shall instruct the jury substantially as therein set forth. The testimony of the police officers with respect to the sobriety of the complaining witness did not require the giving of such an instruction. It has long been the rule in this state that "drunkenness . . . does not require an expert to pronounce upon it." (*People* v. *Monteith* (1887), 73 Cal. 7, 9 [14 P. 373]; *People* v. *Sprague* (1921), 52 Cal.App. 363, 365 [198 P. 820]; *Finn* v. *Sullivan, supra,* 110 Cal.App. 38, 40 [293 P. 639].) It would seem, however, that testimony that Jeffcott was under the influence of narcotics would come within the purview of section 1127b, Penal Code, *supra,* and that the court should have given an appropriate instruction with reference to expert witnesses as required by said section. ■ The failure to give such an instruction does not,.however, require a reversal of the judgment, for after an examination of the entire record, including the evidence, we are of the opinion that such failure had no effect on the jury's verdict in the instant case, and that the same result would have obtained if such an instruction had in fact been given. (*People* v. *Williamson* (1933), 134 Cal.App. 775, 781 [26 P.2d 681]; *People* v. *Sheridan* (1934), 136 Cal. App. 675, 686 [29 P.2d 464]; *People* v. *Fellows* (1934), 139 Cal.App. 337, 342 [34 P.2d 177]; Cal. Const., art. VI, § 4½.)

The judgment and order are affirmed.

Shinn, Acting P. J., and Wood (Parker), J., concurred.